## PREFERRED ACCIDENT INS. CO. v. PATTERSON.

(Circuit Court of Appeals, Third Circuit. May 11, 1914.)

### No. 1830.

1. INSURANCE (§ 668*)—ACTION ON ACCIDENT POLICY—SUFFICIENCY OF EVIDENCE.

Evidence considered, and *held* to justify the submission to the jury of the question whether the death of an insured resulted solely from an accidental injury within the terms of an accident policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1556, 1732–1770; Dec. Dig. § 668.*

Accident insurance—risks and causes of loss, see notes to National Accident Society v. Dolph, 38 C. C. A. 3; New Amsterdam Casualty Co. v. Shields, 85 C. C. A. 126.]

2. INSURANCE (§ 455*)—ACCIDENT INSURANCE—"ACCIDENTAL" INJURY.

Where the death of an insured was caused solely by an injury resulting from his slipping and falling while cranking the motor of an automobile, the injury was "accidental" within the meaning of an accident policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1166–1169; Dec. Dig. § 455.*

For other definitions, see Words and Phrases, vol. 1, pp. 62–70; vol. 8, p. 7560.]

3. CONTINUANCE (§ 29*)—SURPRISE AT TRIAL—DISCRETION OF COURT.

The denial of a continuance during a trial, asked because of a hypothetical question asked an expert witness based on an assumed state of facts different from those alleged in the declaration, *held* not an abuse of the court's discretion.

[Fd. Note.—For other cases, see Continuance, Cent. Dig. § 95; Dec. Dig. § 29.*]

In Error to the District Court of the United States for the District of New Jersey; John Rellstab, District Judge.

Action at law by Minnie C. Patterson against the Preferred Accident Insurance Company. Judgment for plaintiff, and defendant brings error. Affirmed.

William W. Smithers, of Philadelphia, Pa., for plaintiff in error.

Harvey F. Carr, of Camden, N. J., for defendant in error.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

JOHN B. McPHERSON, Circuit Judge. [1] The policy sued upon was issued by the Preferred Accident Insurance Company of New York upon the bodily safety, including the life, of Walter L. Patterson, the husband of the plaintiff. He died 17 days after the occurrence hereafter referred to, and the jury has necessarily found as a fact that

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

(in spite of the lapse of time) his death resulted "directly, independently and exclusively of any and all other causes, from bodily injury effected solely through accidental means." This is the clause of the policy that gives rise to the present dispute, the contention of the company being: (1) That the cause of death was not an accident at all; and (2) that, even if an accident was one of the causes, a second cause that contributed materially thereto was a diseased condition of the kidneys antedating the accident. Evidently, this contention presents questions of fact, and if the evidence was so conflicting as to justify their submission to the jury, and if they were submitted with correct instructions, the verdict is beyond our control. One or two other questions concerning the admission of certain expert testimony are raised by the second, third, and fourth assignments of error, but they were not insisted upon, and we shall not consider them.

It is not our province to weigh the evidence. This was for the jury and for the court below. Our duty is confined to the inquiry whether enough competent and relevant evidence was offered (whether contradicted or not) to prove the essential facts of the plaintiff's case. We have therefore examined the whole record and are satisfied that evidence was presented in support of the facts about to be stated, sufficient to require submission to the jury. Indeed, most of the facts were undisputed, but all of them were supported by evidence that was sufficient if believed to justify the jury in accepting them as true:

The policy sued on was taken out by Walter L. Patterson for the benefit of his wife, the present plaintiff. He was 49 years of age, and his health had been excellent for more than 20 years; during 15 years before his death he had been sick only once. Except upon that occasion he had attended to his business continuously during the period first named. About a year before his death he had been examined for life insurance, and had been recommended as a first-class risk. He was a strong and robust man, about six feet in height, and weighed about 190 pounds. On Saturday, August 5, 1911, the events happened that underlie this dispute. He had brought his motor car from Atlantic City to his home in Ventnor, and had turned it into Hillside avenue, the street on which the house faced. The surface of the street was loose and sandy, having been cut up by recent and unusual hauling, and the car stuck fast. His intention was to put it away in a garage in the basement, but the motor did not work properly, and he was engaged for about half an hour in the effort to crank it successfully, and to move the car off the street. While thus engaged, he apparently lost his footing on the loose and sandy surface of the roadway, the crank handle slipped, and he fell on his stomach, striking the ground near the front of the car. At once he seemed to be in pain, rising with difficulty, and saying to a neighbor on the porch of the next house that he had hurt his back. Soon afterwards he succeeded in putting the car away, and almost immediately went into his own house and lay down, complaining of nausea and exhaustion. In the night he was feverish, and his urine soon became bloody. On Monday, August 7th, he consulted a physician in Collingswood (the town where he carried on his business) and received some medicine. On Tuesday he went to a physician

in Atlantic City, and took to his bed on Wednesday. On Saturday, August 12th, he was removed to a sanitarium in Atlantic City, and on the 16th his left kidney was removed. It was found to be covered with large cysts, by which its proper function had been greatly obstructed. The symptoms indicated that the other kidney (which of course could not be removed) was similarly affected, and this belief was confirmed by a post mortem examination. He died on August 22d, 17 days after the occurrence referred to. The condition referred to is described as polycystic, or cystic degeneration. The medical testimony was in conflict upon the point, whether this condition could have been produced, and had actually been produced, by what took place on August 5th; and also upon the point whether the condition of the kidneys at the time they were removed indicated that they had been diseased before the date just named. The verdict has decided this conflict against the company.

[2, 3] We agree that, when a man is injured while doing merely what he intends to do, he is not injured by an accident, unless the course of his action has been interrupted or deflected by some unforeseen and unintended happening. To illustrate from the facts before us: Since the deceased was attempting to start the engine of his car by turning the crank, whatever injury he might sustain from the ordinary strain of that operation would properly be regarded as a result of what he intended to do, and therefore would not be accounted accidental. But we can hardly suppose that he intended to slip and fall in the course of the operation, and therefore if he did slip and fall, and sustained injury as the direct result thereof, the happening would be unforeseen and unintended, and the injury would be accidental. Now, unquestionably, direct testimony was given that the deceased did slip and fall, and medical testimony was also given connecting the fall directly with his subsequent death. And this may serve to bring us to the first assignment of error. The plaintiff's declaration set forth that while the decedent was—

"cranking the engine or motor of, and attempting to start, a certain automobile, the surface of said street, avenue, or highway, gave way and caved in beneath and away from the feet of the said Walter L. Patterson, causing the said Walter L. Patterson to slip, stumble, and lose his footing, whereby he was subjected to a violent wrench, strain, and shock, whereby he sustained bodily injuries which resulted directly, independently, and exclusively of any and all other causes, and which said bodily injuries were effected solely through accidental means, in the death of the said Walter L. Patterson, etc."

The evidence at the trial did not go so far as to show that the surface of the street had "caved in" beneath the feet of the deceased, but it did tend to show that the surface was loose and had "given way" under his feet. In the course of the trial a hypothetical question was addressed to one of the witnesses, which stated, inter alia, that while the deceased was "attempting to crank an automobile on the 5th day of August, 1911, the crank slipped suddenly out of the socket, throwing him suddenly and violently to the ground, and that immediately afterwards he arose slowly and apparently with difficulty, and complained of pain in the back, etc." The defendant's counsel objected on the ground that the question was not framed in accordance with the aver-

ments of the declaration, but was predicated upon a different state of facts. He therefore alleged surprise, and this, of course, was equivalent to a motion that the trial should be continued; the argument being that the plaintiff was attempting to compel the defendant to answer a case different from the case sued upon. That the situation was thus understood is abundantly evident from the colloquy between court and counsel reported in the record. In other words, the defendant was appealing to the discretion of the court for a continuance on the ground of surprise, and unless the discretion was abused we should not interfere with the ruling. We have given this subject careful consideration, looking at it (as we are bound to do) from the same point of view that was presented to the trial judge when he refused the defendant's motion, and we do not see our way to pronounce his ruling erroneous. Much of the argument that was addressed to us does not appear to have been addressed to the trial judge at all, and indeed could not have been addressed to him properly, for it is based in part on evidence that had not then been offered. Indeed, the argument supporting this assignment of error is really an attack on the verdict; the effect of the contention being that the weight of the evidence is strongly with the defendant. But upon this assignment we are confined to the only question that can be properly brought before us, namely, whether the trial judge abused his discretion in declining to continue the case, and upon that question we have already expressed our opinion.

The other three assignments that are insisted on do not need much further discussion. In answer to the fifth—which asked for binding instructions on the ground "that there has been no evidence of an accident"—we repeat that in our opinion the defendant was not entitled to such instructions. In reference to the sixth and seventh assignments, we need only say that the fundamental difficulty about the defendant's argument is that the verdict has practically destroyed it. To state the argument briefly: The policy provides that recovery for a death can be had only when the insured dies from bodily injuries effected through accidental means, as a direct result of the accident, and when the death results solely from such accident, independently and exclusively of any and all other causes. Therefore, if disease existing at the time of the accident was one cause of the death, the plaintiff cannot recover. The jury was properly instructed to that effect, and the verdict therefore establishes that there was an accident, that the accident was the direct and the only cause of death, and that the insured was not diseased at the time of the accident. With these facts established by sufficient evidence, the cases relied on by the company cease to be applicable, and need not be discussed. The charge as a whole was clear and satisfactory, and we see no serious objection to the illustration complained of in the sixth assignment. And, in the absence of sufficient medical evidence concerning the difficult—and, we think we may add, the somewhat obscure—subject of the effect of a predisposition to the particular disease in question, we discover no error in the court's instruction on this subject.

The judgment is affirmed.