MARYLAND CASUALTY CO. v. MORROW.

(Circuit Court of Appeals, Third Circuit.   May 11, 1914.)

No. 1838.

INSURANCE (§ 455*)—ACCIDENT INSURANCE—LIMITATION OF LIABILITY BY PRO-
VISIONS OF POLICY—CONCURRENT CAUSES OF DEATH.

Under an accident policy limiting liability to disability or death result-
ing solely from accidental injury "independently of all other causes,"
there can be no recovery for the death of the insured resulting from the
concurring effect of an injury and pre-existing diseases.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1166–1169;
Dec. Dig. § 455.*

Accident insurance—risks and causes of loss, see notes to National Ac-
cident Society v. Dolph, 38 C. C. A. 3; New Amsterdam Casualty Co. v.
Shields, 85 C. C. A. 126.]

In Error to the District Court of the United States for the Western
District of Pennsylvania; James S. Young, Judge.

Action at law by Amanda Morrow against the Maryland Casualty
Company.   Judgment for plaintiff, and defendant brings error.   Re-
versed.

Don Rose, of Pittsburgh, Pa., for plaintiff in error.
Ralph P. Tannehill, of Pittsburgh, Pa., for defendant in error.

Before BUFFINGTON and McPHERSON, Circuit Judges, and
WITMER, District Judge.

J. B. McPHERSON, Circuit Judge.   The plaintiff below, Mrs.
Amanda Morrow, was the beneficiary in a policy of accident insur-
ance upon the life of her husband, and obtained a judgment in the
District Court.   The case is now before us upon assignments of error
that complain (1) of the court's refusal to direct a verdict in favor of
the defendant company, and (2) of certain instructions in the charge,
to which reference will hereafter be made.   The facts are as follows:

During the night of December 27, 1910, Joseph C. Morrow, the
insured, a resident of the city of Pittsburgh, while on his way to the
bathroom of his house, stubbed the fourth toe of his left foot against
a chair, and the company concedes that the occurrence was accidental.
The injury caused a good deal of pain, but was not then regarded as
serious.   Home remedies were used until January 20th, when a physi-
cian was summoned, who found that the middle phalange, or bone,
had been broken.   The doctor treated the toe until January 25th,
when the insured was removed to a hospital.   Apparently no gangrene
had then appeared—at least not definitely—but the amputation of the
toe was believed to be desirable.   The usual examination of the
patient's urine was promptly made, and he was found to be suffering
from diabetes; about 6 per cent. of sugar being discovered.   As the
presence of diabetes makes an operation hazardous, he was treated
medically for this trouble with some success for nearly four weeks.
Soon after he entered the hospital, gangrene made itself known and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

spread over part of the foot and the leg, so that an operation became imperative. On February 22d the leg was removed above the knee, but, although the gangrene apparently ceased to spread, the insured died on March 6th. An autopsy two days later disclosed several diseases, pneumonia of both lungs, arterio-sclerosis—thickening of the left femoral and iliac arteries, with a thrombus or blood clot in one of them—the presence of pus and numerous gallstones in the gall bladder, a chronic affection of the heart, enlarged kidneys showing chronic Bright's disease, and a diseased pancreas. The pneumonia may be disregarded, since this may have been contracted in the hospital; but the medical testimony made it clear that some, if not all, of the other diseases existed at the time of the accident, and were not caused thereby. It was undisputed that the presence of diabetes required the operation to be delayed, and that the gangrene was diabetic. The leg was removed only as a last resource.

Even a layman, if ordinarily well informed, might be confident that the injury to the toe could not have caused all the diseases named, and that these did not spring up after the date of the accident. As the medical testimony was to the same effect, we may take it as a fact in the case that when the toe was injured the insured was afflicted with some or all of the serious diseases just referred to. In that state of the evidence, the trial judge instructed the jury, inter alia, as follows:

"If the result from the injury to the foot was the gangrene, although it was accelerated by or contributed to by the condition of Mr. Morrow as to diabetes, as to his liver or lungs, I would say to you—to put it fairly for counsel—that, if they did contribute, they would not, in my judgment, be the cause. In other words, if Mr. Morrow was in such condition as to his organs that an injury would precipitate the gangrene, although these conditions would contribute to it, then I would say to you that it would be fair to find that the cause was the injury to the foot. * * * I say again that if the injury was the cause of the gangrenous condition, although the condition of Mr. Morrow may have contributed, if he were in a condition that gangrene would develop by a bodily injury, then the plaintiff would be entitled to recover."

Now, when it is considered that the policy in suit insures only against "bodily injuries effected solely through external, violent, and accidental means, that independently of all other causes results in death or the disabilities set forth," the error in the passage just quoted does not seem to need much discussion. The jury were told in effect that, although death might have resulted from two concurring causes—one being the injury and the other being diabetes—the plaintiff would nevertheless be entitled to recover. But this is not the established rule under a policy containing the foregoing clause. The result of the authorities is thus summarized in the note to Stanton v. Insurance Co., 34 L. R. A. (N. S.) 445:

"Under policies of accident insurance limiting the liability of the insurer to disability or death resulting 'independently of all other causes' from accidental injuries, and precluding recovery if the disability or death resulted, wholly or in part, directly or indirectly, from disease or bodily infirmity, it may be laid down as a general rule of law, established by the authorities herein cited, that if the insured, at the time of the alleged accidental injury, was also suffering from a disease, and the accident aggravated the disease, or

the disease aggravated the effects of the accident, and actively contributed to the disability or death occasioned thereby, there can be no recovery upon the policy."

The cases cited in the note amply sustain this statement. As was said by Judge Butler in Hubbard v. Mutual Acc. Ass'n (C. C.) 98 Fed. 930:

"If the assured chooses to bind himself to such a stipulation, he must bear the consequences; the court cannot relieve him."

In Preferred Acc. Ins. Co. v. Patterson, 213 Fed. 595, 130 C. C. A. 175, just decided by this court, the facts differed in the vital point that the jury found the insured to have been free from disease at the time of the accident, whereas both parties here agree (and the charge assumes) that death was caused by the concurring action of the injury and of pre-existing disease.

It is unnecessary to consider the first assignment of error.

The judgment is reversed, with a new venire.