ÆTNA LIFE INS. CO. OF HARTFORD, CONN., v. RYAN.

(Circuit Court of Appeals, Second Circuit. December 16, 1918.)

No. 106.

1. EVIDENCE ⊂⇒126(3)—RES GESTÆ—DECLARATION.

Declaration of deceased, when stricken at dinner, that he had been hit by door of subway car, is inadmissible as part of res gestæ, in action on his accident policy; it not appearing how long after accident, the res gestæ, the declaration was made.

2. INSURANCE ⊂⇒466—ACCIDENT INSURANCE—SOLE CAUSE OF DEATH.

To recover on policy insuring against death resulting, directly and independently of all other causes, from bodily injuries effected solely through external, violent, and accidental means, plaintiff must show an accident which was the sole cause of the death; it not being enough that an accident was the proximate cause, if death would not have resulted but for a pre-existing disease.

In Error to the District Court of the United States for the Eastern District of New York.

Action by Catherine Ryan against the Ætna Life Insurance Company of Hartford, Conn. Judgment for plaintiff, and defendant brings error, plaintiff in error hereinafter being called "defendant," and defendant in error hereinafter being called "plaintiff." Reversed.

See, also, 253 Fed. 457.

James B. Henney and Bouvier, Beale & Geer, all of New York City (Phelan Beale, of New York City, of counsel), for plaintiff in error.

Edward H. Daly, of New York City (Edward H. Daly, of New York City, of counsel), for defendant in error.

Before WARD, ROGERS, and MANTON, Circuit Judges.

ROGERS, Circuit Judge. The plaintiff has obtained a judgment for $12,045.84 damages and costs entered against the defendant, after a trial before a judge and jury.

The action was brought by plaintiff as the beneficiary under an accident insurance policy upon the life of her husband.

The complaint alleges that the insured lost his life because of an injury he sustained while a passenger on a train of the Interborough

Rapid Transit Company in one of its subway stations in the city of New York. It is alleged that while he was entering the train he "sustained bodily injuries effected solely through external, violent, and accidental means, to wit, by being struck by a closing car door of said train, which blow by said door precipitated, hastened, and developed a cerebral hemorrhage in the said Michael J. Ryan, who had arteriosclerosis, which hemorrhage caused the death," etc. The injury was received on August 25, 1917, and death resulted on September 9, 1917.

The policy provided that no indemnity was payable unless the insured was injured or came to his death, "directly and independently of all other causes, from bodily injuries effected solely through external, violent or accidental means, suicide (sane or insane) not included."

The defendant sets up the defense that the beneficiary died as a result of disease.

The insured at the time of his death was 53 years old. He was bandmaster in the Catholic Protectory in the borough of the Bronx in the city of New York. On the morning of August 25th he left his home in Brooklyn and went by subway to the Protectory, which he reached about noon. He sat down in the dining room to eat his dinner, and about 12:15 p. m., while at the table and when he was speaking, he suddenly became dumb and could not hear when spoken to and fell to the floor and could not move his left arm. He was picked up and placed on a chair. An ambulance was called, and he was taken to the hospital, where he died on September 9th.

[1] It appears that a witness who assisted in picking him up when he fell in the dining room of the Protectory was asked whether he had any conversation with Ryan after he fell. He replied:

"I was near him all the time. He was mumbling to me and the brothers that he was hit by the subway door, the center door."

It was moved to strike out the answer on the ground that it was too remote and not part of the res gestæ. The objection was overruled, and the court allowed the answer to stand, stating that the issue to which the statement had reference was "as to whether there was an occurrence or blow at all; and, as to that, I think this statement is a part of the res gestæ." The witness did not testify as to any statement made by Ryan as to when he was hit, or where upon his body or other part of him he was hit.

The evidence was certainly inadmissible as a part of the res gestæ. It does not appear when Ryan was hit by the subway door. It may have occurred at one time as well as another. No one knows how long after the event the narration was made. The res gestæ was the accident. The declaration made by Ryan was no part of it. It was not made at the time of the accident, and it does not appear that it was so nearly contemporaneous with it as to throw light upon it. Res gestæ is admissible because and only because it is so connected with the event which it describes that it is a contemporaneous part of and happens with the event. Vicksburg & Meridian Railroad v. O'Brien, 119 U. S. 99, 7 Sup. Ct. 118, 30 L. Ed. 299; Boston & Albany Railroad Co. v. O'Reilly, 158 U. S. 334, 337, 15 Sup. Ct. 830, 39 L.

Ed. 1006; Keefer v. Pacific Mutual Ins. Co., 201 Pa. 448, 51 Atl. 366, 88 Am. St. Rep. 822. In Insurance Co. v. Moseley, 8 Wall. 397, 19 L. Ed. 437, which was an action on an accident policy, a declaration made by a deceased person was held admissible as a part of the res gestæ. The case is distinguishable from the case at bar. The question there was whether the assured died from the effects of a fall downstairs in the night. The testimony of his wife showed that he left his bed between 12 and 1 o'clock and when he came back said he had fallen down the back stairs and almost killed himself. And the son, who slept in the lower part of the building occupied by his father, testified that about 12 o'clock on that same night he found his father lying with his head on the counter and asked him what was the matter and that he replied he had fallen down the back stairs and hurt himself very badly. The court in sustaining the admission of the evidence did so upon the ground that the declarations were made immediately or very soon after the fall. Justices Clifford and Nelson dissented. In that case it was known when the accident happened and the declarations were practically contemporaneous with it. In the case at bar it did not appear when the accident occurred. It might have been in the morning when the decedent started to come to New York, or it might have been when he got off to call at a store at Cooper Square as the testimony shows he did, or when he again took the subway train to go to the Proctectory, or when he once more alighted from the train on arriving at his destination. And, indeed, the accident might have happened on a prior day. In any event, the declaration was not contemporaneous with the accident.

An examination of the record in this case, however, discloses a fatal defect. It appears established beyond controversy that the deceased at the time he fell to the floor in the Protectory was suffering from arteriosclerosis, and that the disease was in a well-advanced state and affected his entire vascular system. It extended throughout all parts of his body, including his brain. The disease results in a hardening and narrowing of the entire arterial system. The arteries become filled with lime salts and fibrous tissues so that the opening through which the blood passes becomes smaller and as the same amount of blood has to pass through the blood pressure is increased. As one of the witnesses testified "it is just as if you had been running water through a half inch pipe, and then finally the diameter of the pipe has been reduced, and you are pumping it through a quarter inch pipe," or an eighth of an inch pipe. And when the pressure becomes at length too high the blood vessel breaks at the weakest point. The arteries of the brain seem to be the ones which usually rupture under those conditions. The evidence showed that the deceased also was suffering from Bright's disease of a chronic nature, and that he had myocarditis, which is an inflammation of the heart muscle.

The autopsy disclosed that the deceased died from a hemorrhage in the brain, there being a rupture of a cerebral blood vessel which might have resulted from any exertion. The physician who made the autopsy testified that, while the immediate cause of death was the cerebral hemorrhage, arteriosclerosis, chronic diffuse nephritis, and myocarditis were contributory causes. He also testified that in case

of a hemorrhage of the brain death might result in ten minutes or within several days or weeks, according to the extent of the hemorrhage.

The plaintiff claimed that the cerebral hemorrhage was the direct and independent cause of the death of the insured, and that it was effected solely by his being hit by the subway door. But there is no evidence in the record that deceased was hit by the door, except his statement already referred to as erroneously admitted. The counsel for the plaintiff laid stress upon the condition of the hat of the deceased which was produced as an exhibit as were his broken spectacles, which fell out of his pocket after he had been picked up from the floor. Non constat but that the spectacles were broken when he fell to the floor, as they fell out of his left hip pocket and he fell on the left side. We inspected the hat exhibited to us upon the argument and discovered nothing which indicated that it had received a blow. The forehead rim of the right underside appeared either to have become unglued or the sewing separated the upper surface from the lower surface for perhaps an inch. The autopsy disclosed no external marks of any violence on the body or the head.

[2] The burden of proof rested on the plaintiff to establish the fact that the insured sustained an accident and that there could be no recovery upon the policy of insurance unless that accident was the sole cause of his death, as the policy insured him against a death "resulting, directly and independently of all other causes, from bodily injuries effected solely through external, violent and accidental means." The cases establish the principle that, if death results from disease or a bodily infirmity, there can be no recovery under such a policy whether the insured suffered an accident or not. And they also show that there can be no recovery if the insured sustained an accident but at the time it happened was afflicted with a pre-existing disease and if death would not have resulted if he had not had the disease, but his death was caused because the accident aggravated the effects of the disease or the disease aggravated the effects of the accident. National Masonic Accident Association v. Shyrock, 73 Fed. 774, 20 C. C. A. 3; Maryland Casualty Co. v. Morrow, 213 Fed. 599, 130 C. C. A. 179, 52 L. R. A. (N. S.) 1213; Preferred Accident Ins. Co. v. Patterson, 213 Fed. 595, 130 C. C. A. 175; Illinois Commercial Men's Ass'n v. Parks, 179 Fed. 794, 103 C. C. A. 286; Stanton v. Travelers' Ins. Co., 83 Conn. 708, 78 Atl. 317, 34 L. R. A. (N. S.) 445; Stokely v. F. & C., 193 Ala. 90, 69 South. 64, L. R. A. 1915E, 955; Pacific Mutual Life Ins. Co. v. Despain, 77 Kan. 654, 95 Pac. 580; Ætna Life Ins. Co. v. Bethel, 140 Ky. 609, 131 S. W. 523; White v. Standard Life & Accident Ins. Co., 95 Minn. 77, 103 N. W. 735, 884, 5 Ann. Cas. 83; Thomas v. Fidelity & Casualty Co., 106 Md. 229, 67 Atl. 259; Robinson v. U. S. H. & A., 192 Ill. App. 475; Continental Casualty Co. v. Peltier, 104 Va. 222, 51 S. E. 209; Jiroch v. Travelers' Ins. Co., 145 Mich. 375, 108 N. W. 728; Ward v. Ætna Life Ins. Co., 85 Neb. 471, 123 N. W. 456; Penn v. Standard Life & Accident Ins. Co., 158 N. C. 29, 73 S. E. 99, 42 L. R. A. (N. S.) 593.

The only testimony in the record that the deceased received any injury whatever is as we have already stated the erroneously admitted testimony that he mumbled that he had been hit by a subway door. And there is no testimony from which the kind and character of the injury, if any, could be inferred.

There is undisputed testimony that the conditions found at the autopsy to exist were in themselves a competent producing cause for the cerebral hemorrhage which resulted in the decedent's death.

The court charged as follows:

"If you find that the plaintiff satisfies you by a preponderance of testimony which you believe that the man, walking around and carrying with him all the time the possibility of having a cerebal hemorrhage from some slight accident, did meet with an accident, and that was the proximate cause of his death, then it would come within the policy. That is, if the accident was the proximate cause of his death.

"On the other hand, if a man was walking around, who was likely to die at any time from disease or who was likely to die at any time from slight accident, and if he suffered a slight accident and then walked any distance, but then died from something apart from the accident, it would not be within the policy."

The court refused to charge as follows:

"The plaintiff in this case cannot recover under the terms of the policy herein for any loss resulting in connection or in conjunction with any other causes not of external violence, and if the jury should find that the decedent received an alleged blow by coming in contact with the center door of a subway train that the said decedent at the time was suffering from arteriosclerosis, chronic diffuse nephritis, and myocarditis, and that by reason of the existence of the said physical conditions the said blow, in connection therewith, caused the cerebral hemorrhage resulting in death, this plaintiff cannot recover."

The court also refused to charge as follows:

"The policy in suit only insured the decedent 'against loss resulting directly and independently of all other causes from bodily injuries effected solely through external, violent and accidental means,' and if the jury should find that the defendant's death was not a loss resulting directly and independently of all other causes from bodily injuries effected solely through external, violent, and accidental means, their verdict must be for the defendant."

The requests to charge were proper. The charge as given was improper as appears from the cases already referred to.

The trial court submitted the case to the jury upon the theory that, if the alleged accident was the proximate cause of the death, the plaintiff would be entitled to recover. If there had been legitimate evidence showing that an accident had happened, the rule of proximate cause as applied ordinarily in negligence cases would have been inapplicable, as the policy upon which this suit was brought provided that there was to be no liability unless the injury was the sole cause of death.

The jury rendered their verdict on the theory that the accident in the subway occurred. When the jury returned their verdict the court addressing the jury said: "You have found by your verdict that the accident occurred on the subway?" And the foreman answered: "Yes, sir."

Not only was erroneous testimony admitted, but the instructions to the jury were based upon an erroneous theory. A verdict and judgment so obtained cannot be permitted to stand.

Judgment reversed.