## Coburn v. Maryland Casualty Company.

(Decided May 8, 1928.)

### Appeal from McCracken Circuit Court

Insurance.—Beneficiary, in combination accumulative accident policy carried by husband, could not recover for husband's death, where he performed all his duties as conductor for continuous period of three weeks after accident, and thus was not continuously and wholly disabled within meaning of provision stating that, if injuries should, exclusively of all other causes, continuously and wholly disable and prevent assured from date of accident from performing duties pertaining to occupation, and during such continuous disability should, independently of all other causes, result in one of losses specified, company would pay sum specified.

W. A. BERRY for appellant.

WHEELER & HUGHES for appellee.

Opinion of the Court by Chief Justice Clay— Affirming.

Maud Coburn, the wife of Frank P. Coburn, was the beneficiary in a combination accumulative accident policy carried by her husband in the Maryland Casualty Company. Among the provisions of the policy were the following:

"1.   (a)  If such injuries shall, independently and exclusively of all other causes, continuously and wholly disable and prevent the assured from the date of accident from performing any and every kind of duty pertaining to his occupation, and during the period of such continuous disability shall, independently and exclusively of all other causes,

result in any one of the losses specified in this section (1), the company will pay the sum set opposite such loss, and in addition weekly indemnity as provided for herein to date of death, dismemberment or loss of sight, as the case may be;

"(b) Or, if within ninety days from the date of accident, irrespective of total disability, such injuries shall, independently and exclusively of all other cases, result in any one of the losses specified in this section 1, the company will pay the sum set opposite such loss.

"For loss of life, the principal sum."

On December 2, 1922, and while the policy was in force, the assured was injured, and died on March 28, 1923.

In this action to recover on the policy, the trial court directed a verdict in favor of the insurance company. Plaintiff has appealed.

According to Mrs. Coburn, her husband died on March 28, 1923. She remembered the occasion of the accident in December, 1922. She saw his hand, but it had been dressed when she saw it. The ends of two fingers were mashed. Her husband went back to work the latter part of January. He worked a couple of weeks, and was off for three or four days. He then went back to work, made two trips, and never worked any more.

Gladys Coburn, the daughter of Maud Coburn and Frank Coburn, testified as follows: She arrived home four or five days after the accident, and remained until the last of January. She returned to New York before her father went back to work. She saw the injury every day while in Paducah. During that time her father was very weak, and complained of his fingers. He stayed in bed most of the time, but at intervals would get up and go out. The latter part of January she went back to New York and stayed there for about three weeks. Receiving a communication that her father was worse, she returned to Paducah. When she returned, her father was in bed. She saw his hand, and "it looked very bad." She remained in Paducah until her father's death. Her father's hand was frightful looking. It was infected. She had been with her father some prior to December, 1922. Up to that time he was healthy and always attended to his business. There had been nothing alarming about his condition for a period of ten years.

The evidence of Dr. J. Q. Taylor, assistant chief surgeon of the Illinois Central Railroad, is as follows: Capt. Coburn came to see him and showed him his hand. He examined the hand twice. The first time Coburn came he did not take the dressing off. The second day he took the dressing off and saw the condition of his fingers. One of the fingers was black, and it looked like gangrene had set up. The other finger was not so bad. He never saw Coburn any more after that. He asked Coburn to come out to the hospital, where his hand could be looked after, and told him that the end of his finger had to be removed. Coburn did not come. In his opinion, the gangrene portion of his finger should have come off, as it would heal much quicker than to let it fall off. If this were not done, blood poison would set up.

Dr. Warren Sights, the district surgeon of the Maryland Casualty Company, testified that he saw Coburn about four days before his death. He made no physical examination of him. He sat within three feet of Coburn, saw that he was quite pale, that his limbs were swollen locally, and that he was very short of breath. These symptoms indicate Bright's disease, heart disease, or some sort of malignant tumor. In blood poisoning the affected limb is locally swollen, the patient is short of breath, he will have a high temperature, and he will have what is called a toxic appearance. At the time he saw Capt. Coburn, Coburn did not have the appearance of a man who was suffering from blood poisoning. In his opinion, the cause of Coburn's death was Bright's disease. The reason he did not make a physical examination was that the Coburn family were all Scientists, and he was sent for to cheer Coburn up.

J. L. Small, the claim agent for the Illinois Central Railroad Company, testified that he knew Coburn. Coburn came to the hotel to obtain an adjustment of his claim for time lost, for the purpose of enabling him to go back to work. An adjustment was made and he returned to work as conductor.

W. O. Burch, an engineer on the Illinois Central Railroad, testified that he recalled the circumstances when Capt. Coburn got his fingers mashed. In January, 1923, he was on the train as conductor for two or three weeks. He was then off for a while and went back to work again in a few days. When on duty he performed all the duties of the conductor.

An agreed statement was filed, showing the following facts: Coburn was injured on December 3, 1922, by having three of his fingers crushed. He was unable to perform any of his duties as conductor up to January 22, 1923. On that day he returned to work as conductor. Thereafter he signed the daily time slips until February 16, 1923, when he laid off until February 21, 1923. On that day he returned to work and worked until February 25, when he quit work, and did not return to work any more.

As the assured did not die within 90 days from the date of the accident, the case does not fall within provision (b), above quoted. To bring the case within provision (a), it was not only necessary for the beneficiary to prove that the injury, independently and exclusively of all other causes, resulted in the death of the assured, but also that the injury, independently and exclusively of all other causes continuously and wholly disabled and prevented the assured from the date of accident from performing any and every kind of duty, pertaining to his occupation. In view of the conclusion of the court, it is unnecessary to determine whether the evidence that the assured's death resulted from the injury was sufficient to take the case to the jury. In considering a clause similar to the first part of clause (a) in the case of Doyle v. New Jersey F. & P. G. Ins. Co., 168 Ky. 789, 182 S. W. 944, Ann. Cas. 1917D, 851, we said:

"From the above quotations from the O'Brien case (155 Ky. 498, 159 S. W. 1134), it will be seen that this court is committed to a 'reasonable construction' of the clause in question 'that is as just to the assured as to the insurer,' and that that end is attained 'if the disability of the insured is such as to prevent him from doing all the substantial acts required of him in his business.' And while it is difficult to state a general rule of construction that will be applicable to all cases, we think we may safely state as an elaboration of our views upon this subject that a recovery should not be denied under such a clause as we have before us when the evidence shows that the insured was able to be up and about, and to do minor and trivial things not requiring his time or attention, or to direct his business and do some of the work himself, if his injuries are such that common prudence demands he desist from his

labors and rest, so long as it is reasonably necessary to effect a speedy cure, and he is unable to do the things which constitute substantially all of his occupation, or wholly disabled from doing all the substantial and material acts necessary to be done.''

The agreed statement of facts, together with the uncontradicted evidence, shows that the assured was injured on December 3, 1922, and that he was unable to perform any of his work as conductor up to January 22, 1923. On that date he returned to work, and continued to work and perform all of his duties as conductor up to February 16, 1923. Between that time and February 21 he was not at work. On February 21 he returned to work, and continued to perform his duties until February 25, when he quit altogether. Even under the liberal construction we have given to the provision, it hardly can be said that the assured was continuously and wholly disabled. For a continuous period of three weeks, and at other times, he acted as conductor. Hence the case is not one where he merely attended to minor and trivial things, or directed the running of trains, and did some of the work himself, or his injuries were such that common prudence demanded that he desist from his labors and rest for such time as was reasonably necessary to effect a speedy cure. On the contrary, the case is one where he performed all his duties as conductor for a continuous period of three weeks, and also at other times. The evidence not being sufficient to show that the assured was continuously and wholly disabled within the meaning of the policy, the trial court did not err in directing a verdict for the company.

Judgment affirmed.