No. 28,182.

ELGIN E. PENQUITE, *Appellee*, v. THE GENERAL ACCIDENT, FIRE AND LIFE ASSURANCE CORPORATION, *Appellant*.

(268 Pac. 851.)

Opinion filed July 7, 1928.

*Robert C. Foulston, W. E. Holmes, D. W. Eaton, George Siefkin, Sidney L. Foulston* and *Lester L. Morris,* all of Wichita, for the appellant.

*V. Harris* and *M. P. Shearer,* both of Wichita, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an appeal from a verdict and judgment against the defendant on an accident insurance policy, wherein three points are especially raised on review: First, *res adjudicata;* second, sufficiency of notice of disability or waiver thereof; and third, whether or not there is any liability under the policy.

The case was here once before. At that time it was on an appeal

by the plaintiff from the sustaining of a demurrer to the petition. The decision of the trial court was affirmed on the ground that the defendant was not liable under its policy for the injury alleged, because the total disability as stated in the petition did not begin for several weeks after the accident.

"Total disability from an accident which does not begin until several weeks after its occurrence is not within the terms of a policy insuring against accident if the injury shall wholly and continuously disable the insured from date of accident." (*Penquite v. General Accident, etc., Corp.*, 121 Kan. 174, syl., 246 Pac. 498.)

When the mandate reached the trial court the plaintiff, by leave of court, amended his petition by asking for weekly indemnity for total disability for a different period of time than that covered in the original petition, and alleging that the hernia as caused by the accident was a progressive disease. The demurrer to the amended petition was overruled, answer filed, and trial had to a jury, with the result of a verdict and judgment in favor of the plaintiff, from which this appeal is taken.

The plaintiff was a fireman in the city of Wichita, and in answer to an alarm attempted to slide down a pole from the second to the first floor of the fire station. In doing so he violently and accidentally struck his body against the pole, lost his hold, and fell to the first floor of the fire station. This occurred on December 21, 1921. On May 4, 1922, he discovered that the hernia he had was the result of the accident, and on July 14, 1922, he ceased work, having been at work since the accident. The injury sustained, as described by the physicians who testified, was a double inguinal hernia. Ruptures of this kind are usually progressive unless a truss is worn or an operation performed. The plaintiff stated upon the witness stand that—

"When I hit the floor I felt a severe pain right in the region where the pads on the truss are now. It was a very severe pain, just like a knife sticking in me, and something in there popped at that time, and I felt it. The pain made me sick and dizzy. That severe pain continued about fifteen minutes. I knew at that time that the pain and popping were the result of the accident. After that fifteen minutes I had the pain, and in that same place, but not so severe. The pain was severe enough at all times, but I did not notice it at some times, and other times I would. That pain was always at the same place as it was at the time of the accident. I knew that that pain was caused by the accident."

The special findings made by the jury, or the answers made by them to special questions, were as follows:

"1. On what date was the plaintiff Penquite injured? A. December 21, 1921.

"2. Did the plaintiff know the nature of such injury prior to May 4, 1922? A. No.

"3. Did the injury progress from December 21, 1921, to May 4, 1922? A. Yes.

"4. Did the injury progress from May 4, 1922, to July 14, 1922? A. Yes.

"5. When did the plaintiff cease work as a fireman? A. July 14, 1922.

"6. At the time and immediately after the injury which plaintiff received, did the plaintiff know that he had received an injury as a result of the fall mentioned in the evidence? A. Yes.

"7. Did the plaintiff know at all times after the accident and until he quit work that the pain and suffering described by him was the result of the accident? A. Yes."

The paragraph in the policy which makes the defendant company liable, if at all, is as follows:

"Or, if such injuries do not result in any one of the losses enumerated in part I, but shall independently and exclusively of all other causes, wholly and continuously disable and prevent the insured from date of accident from performing any and every kind of duty pertaining to his occupation, the corporation will pay the weekly indemnity above specified for the entire period of such total disability."

As to the claim of the appellant that this is *res adjudicata*, having been fully and completely determined in the former hearing on the demurrer to the petition, we think any substantial addition to the allegations of a petition, setting forth facts not theretofore contained in the original petition, or inadvertently omitted therefrom, if it is a material and additional allegation to the issues already involved, will require on the hearing of a demurrer to the amended petition a new and different ruling, and on the trial a new and different judgment, and with such amendment the case is not *res adjudicata*.

"Where the ground of the demurrer is the omission of a material allegation from plaintiff's pleading, a judgment sustaining the demurrer will not prevent the maintenance of a new suit on the same cause of action, in which the declaration or complaint supplies the missing averment." (34 C. J. 797, 798. See, also, *McLaughlin v. Doane,* 40 Kan. 392, 19 Pac. 853; *McClung v. Hohl,* 10 Kan. App. 93, 61 Pac. 507.)

A progressive disease as alleged in the amendment has been recognized by the courts sufficiently to justify its being considered a substantial addition to the petition.

The second and third points urged by the appellant are naturally coupled with the first, because the very fact that a disease is alleged to have been progressive makes the more severe consequences of

it less cognizable at first, and by the development in the process of nature leads to something very often not known or even suspected at first. So it has been held in many cases that the injured person is excused from the giving of notice within the prescribed time because neither he nor his physician had any reason to suspect such serious results at first or know that the illness or disability was in fact the result of or attributable to an injury. The question of notice in this case is readily disposed of by reason of the offer of the agent of the defendant to pay plaintiff a certain sum on account of the accident, which constitutes a waiver.

"A distinct recognition of liability by the insurer, as by an offer to pay all or a part of the loss, amounts to a waiver of formal notice." (14 R. C. L. 1349. See, also, *Despain v. Insurance Co.*, 81 Kan. 722, 106 Pac. 1027; *Ring v. Assurance Co.*, 100 Kan. 341, 164 Pac. 303.)

In *Commercial Travelers v. Barnes*, 72 Kan. 293, 80 Pac. 1020, a merchant swallowed a metal pin on July 23, which caused him much distress. He continued to go regularly to his place of business until August 4, when he became wholly disabled. On October 1, a metal pin was discovered in his vomit and was identified with the sudden illness of July 23.

In *Erickson v. Commercial Travelers*, 103 Kan. 831, 176 Pac. 989, a baseball pitcher suffered an injury on September 13, which gave him little or no trouble until the last days of February following, when the pain became more severe, and about that time he became totally disabled for work. Upon examination he learned for the first time that it was the result of the injury in the preceding September. It was held that—

"The result of the accident did not develop at once, . . . and that the disability was reached within the time that the processes of nature take to effect such a development." (p. 833.)

In *Hawthorne v. Protective Association*, 112 Kan. 356, 210 Pac. 1086, the plaintiff accidentally swallowed a fence staple which he had in his mouth at the time he fell, and it lodged in his throat. This was only a surmise or opinion on his part, which he yielded to the judgment of his physicians to the contrary. Later the truth was discovered, by means of an X-ray examination, that the staple had lodged in his throat. It was held that he was excused from the requirement of giving notice, although the X-ray examination did not take place for nearly two years after the accident occurred.

These and other cases use this natural process of development of

disease to inform the injured party of the nature and character of the injury, as is alleged in this petition, and excuse him from the requirements of giving notice before he understands the nature and extent of his injury. This progressive feature may also, depending upon the language of the policy, defer the commencement of the total disability, giving the processes of nature reasonable time to develop the disease so that it may become a total disability when at first it was not.

"A disability is immediate, within the meaning of such contracts, when it follows directly from an accidental hurt, within such time as the processes of nature consume in bringing the person affected to a state of total incapacity to prosecute every kind of business pertaining to his occupation." (*Commercial Travelers v. Barnes*, supra, syl. ¶ 3.)

"An injury develops at once and is continuous within the meaning of an accident insurance policy when it follows directly from the accidental hurt within such time as the processes of nature consume in bringing the person affected to a state of incapacity to prosecute his occupation." (*Rabin v. Business Men's Association*, 116 Kan. 280, syl. ¶ 3, 226 Pac. 764.)

In the case last cited the injured party, in going to the telephone in the night, struck his great toe against the furniture with such force as to drive the nail back into the flesh, requiring the nail to be removed. After about ten days pyrogenic infection developed, which disabled him totally for some time.

While, as stated above, these cases cited have most to do with the question of delay in giving the notice within the required time or within a reasonable time thereafter, yet in some of the cases the disability was not total for some time after the injury, and a construction has in those cases been put upon the term "immediately," as used in the policies of some of the cases cited. But the term "immediately" is not used in the policy in this case. Instead thereof, the defendant is liable for total disability from the date of the accident. This difference in language used takes this case out of the class of cases giving an interpretation to the word "immediately." No interpretation is needed for the words "from date of accident." Unless there is a total disability from the date of the accident there is no liability, even if the disease was progressive. As was said in the opinion of this case when here before, the plaintiff gave his assent to these conditions when he accepted the policy, and possibly the rate of premium was in accordance with the risk assumed.

The answers of the jury show it was a progressive disease or in-

jury, but to what effect under such provision limiting liability when the jury further find that plaintiff did not cease work until July 14, nearly seven months after the accident, and further show, quite unlike the cases above cited and discussed, that plaintiff at the time of and immediately after the injury knew he had received an injury as a result of the fall, and at all times after the accident until he quit work knew that the pain and suffering he had was the result of the accident? There is no room under these answers and the language of the policy for the application of the progressive feature of this case, and the plaintiff cannot recover.

The judgment is reversed and the cause remanded with instructions to render judgment for defendant for costs.