## MASSACHUSETTS PROTECTIVE ASS'N, Inc., v. LEWIS.

### No. 5109.

Circuit Court of Appeals, Third Circuit.

Sept. 19, 1933.

On Reargument Sept. 21, 1934.

William H. Eckert, William J. Kyle, Jr., and Smith, Buchanan, Scott & Gordon, all of Pittsburgh, Pa., Francis Shunk Brown, and Brown & Williams, all of Philadelphia, Pa., for appellant.

Wm. B. McFall, Jr., and Dalzell, Dalzell, McFall & Pringle, all of Pittsburgh, Pa., for appellee.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

This is an appeal from a judgment of the District Court entered upon the verdict of a jury in favor of the plaintiff, appellee, who

was beneficiary in a life insurance policy on the life of her husband.

On April 27, 1922, Malcolm F. Lewis at Pittsburgh, Pa., made application to the Massachusetts Protective Association, defendant herein, for a policy of insurance on his life. His application was accepted, and "Premier Policy No. 347,901" was issued to him on May 1, 1922. It was kept in force by the payment of annual premiums of $45 until he died.

On June 15, 1930, while bathing at White Fish Lake in the state of Michigan, Mr. Lewis, when diving, struck his head on the bottom of the lake and broke off part of one of his upper teeth. He began immediately to have dull headaches and a disability which increased in intensity until his death on August 29, 1930. The injury produced a concussion of the brain, and the fracture of the tooth caused the dissemination of "streptococcic organisms" or germs, which were at the root of the tooth, through the body, which infected his brain, and this alone in conjunction with the injury caused his death.

After the dive, he came up spitting blood and said, "I got an awful jolt," and sat there a minute, and finally lay down on the dock for about half an hour. "He seemed to feel real bad, and was quite ill for a little while." Before the accident, he was well and quite a healthy man. Afterward, he continually complained, tired easily, and it seemed an effort for him to work. He had planned a vacation of two weeks in the East, where his friends and relatives live, but did not take it, for he wanted to rest and lie around in the cottage at his home. Mrs. Lewis testified that after the accident "he felt tired all the time, complained of his head, and said he felt tired." His physical condition "seemed to gradually get worse. He seemed to complain more of being tired all the time. He didn't get any better so we called Dr. Mitchell. * * * He put him to bed for a day or so, and he didn't seem to get any better so he said he would call in a head specialist, and he called Dr. Blackburn. * * * He came and looked him over and prescribed for him, and he didn't get any better. All this time he had a temperature of 104, so by Saturday he was so bad the doctor said he would have to take him to the hospital." This he did on August 23, 1930, "and he got progressively worse until he died." In short, the evidence shows that he worked as best he could from the date of the accident on June 15th until August 23, 1930, when he was taken to the hospital, where he died on August 29th following.

The question is whether or not the facts of his death bring it within the terms of the insurance policy. If they do not, the court should have directed a verdict in accordance with the defendant's request, but, if they do, the request was properly denied and the judgment should be affirmed.

The policy insured Mr. Lewis "against loss resulting from (1) bodily injuries effected directly and independently of all other causes by accidental means * * * and due solely to external, violent and involuntary causes," but it did not insure against "death due to disease, whether accidental or otherwise." It also provides that: "Loss resulting wholly or in part from hernia, any strain, or from injuries not immediately disabling, shall be classified as sickness."

The defendant says that the court should have directed a verdict for it because the death was not caused solely and independently of all other causes by accidental means, and because the injury was not "immediately disabling."

The first reason is based on the fact that the physicians testified that the insured had an abscessed tooth, a tooth which had at its root streptococcic germs which the injury disseminated through the body and brain and finally produced death. It was, therefore, the defendant says, not the trauma which produced death, but the dissemination of a preexisting disease that did it, and plaintiff, therefore, cannot recover, under the cases of National Masonic Accident Association v. Shryock, 73 F. 774 (C. C. A. 8); Hubbard v. Mutual Accident Association, 98 F. 930 (C. C. E. D. Pa.); Illinois Commercial Men's Association v. Parks (C. C. A.) 179 F. 794; Maryland Casualty Company v. Morrow, 213 F. 599, 52 L. R. A. (N. S.) 1213 (C. C. A. 3); Ætna Life Insurance Company v. Ryan, 255 F. 483, 486 (C. C. A. 2); Kerns v. Ætna Life Insurance Company, 291 F. 289 (C. C. A. 8); Ryan v. Continental Casualty Company, 47 F.(2d) 472, 473 (C. C. A. 5), and many others.

These cases in substance hold that, if at the time of the accident the plaintiff is suffering from a pre-existing disease or bodily infirmity, and the accident would not have caused his death if he had not had the disease or infirmity, but he died because the accident aggravated the effects of the disease or the disease aggravated the effects of the accident, he may not recover.

Every case depends upon its own facts, and the language used by the courts must be considered and construed in relation to those

facts. In the case of Maryland Casualty Co. v. Morrow, supra, the insured accidently stubbed his toe one night, and a doctor was not called for almost a month. It was then discovered that the insured had diabetes, that he had gangrene in his toe which was of a diabetic character, and that death was not effected directly and independently of all other causes than the accident, but that it was effected by two concurring causes, the accident and the pre-existing disease, and so Judge McPherson of this court held that recovery could not be had under the policy.

In the case of National Masonic Accident Association v. Shryock, supra, in addition to the injury resulting from a fall, the insured had fatty degeneration of the heart at the time of the accident, and the injury would not have produced death if the disease had not previously existed.

The court found in Ryan v. Continental Casualty Company, supra, that, at the time of the accident, the insured was afflicted with a serious internal ailment which "caused or proximately contributed to his death," thirty to forty minutes after the accident, and recovery was denied.

In Commercial Travelers' Mutual Association v. Fulton (C. C. A.) 79 F. 423, 426, the insured slipped and fell upon snow or ice on a sidewalk and struck his head and face against a waterspout and died twenty minutes later. He had diseased aortic valves and calcification of the coronary arteries. The court said: "In other words, when the accident (such as a fall) which causes the death was itself caused by some disease, or when an existing disease co-operates with the accidental injuries to cause the death, or when the accidental injuries are of such a character that they would not cause the death of a person in normal health, but do kill the insured, because an existing disease, unknown to the insurer, unknown perhaps to the insured, has put him into such an abnormal condition that he is unable to resist the effects of the injuries as he would if in normal health—in none of these cases is the insurer liable."

In the case of Ætna Life Insurance Company v. Ryan, supra, the insured was struck and squeezed by closing doors of a subway train. Shortly thereafter, while eating his lunch, he fell to the floor, could not speak or move his left arm. He was taken to the hospital, where he remained until his death. It was there found that he was "suffering from a well advanced case of arteriosclerosis, as well as perhaps other diseases," at the time of the accident. The court said: "The cases establish the principle that, if death results from disease or a bodily infirmity, there can be no recovery under such a policy whether the insured suffered an accident or not. And they also show that there can be no recovery if the insured sustained an accident but at the time it happened was afflicted with a pre-existing disease and if death would not have resulted if he had not had the disease, but his death was caused because the accident aggravated the effects of the disease or the disease aggravated the effects of the accident." It held that the disease was a contributing cause of his death, and so recovery could not be had under the terms of the policy.

In all of the cases upon which the defendant relies, the court found that the insured was not in normal health, but was suffering from some well-recognized, present, persisting disease at the time of the accident which aggravated the effects of the accident or which itself was aggravated by the accident, and which disease was a factor in causing death.

In the case at bar, the District Court relied upon the case of Kelley v. Pittsburgh Casualty Company, 256 Pa. 1, 100 A. 494. While walking on steep and icy ground, Kelley slipped and twisted his body about the abdomen. An operation performed three days later disclosed an adhesion of the bowels to the abdominal cavity, and inflammation had set in, so that pus was about to form. The insured was incapacitated for a number of months and sued for compensation. Recovery was allowed on the ground that the policy did not limit liability for injuries accidentally sustained to those who are bodily sound or truly normal men in the sense that they have no bodily defects, notwithstanding that the court found that, if the adhesions had not existed, the accident would not have produced serious results.

The defendant says that this case was overruled, inferentially at least, by the case of Hesse v. Travelers Insurance Company, 299 Pa. 125, 149 A. 96, 97. In that case the insured was suffering from a diseased kidney and died, while undergoing an operation for its removal, from the anæsthetic, because of his hypersusceptibility to such anæsthetic. The District Court distinguished the instant case from that case, and counsel for defendant says the distinction is not well taken, for the court in the Hesse Case "assumed for the purpose of argument that the operation and the administration and effect of the anaesthetic were bodily injuries." But counsel is mistaken. What the court said was: "Even if we assume that the operation was a bodily injury

within the meaning of the policy, we have it admitted that the insured's death did not result from the operation, but solely from the anaesthetic, neither the administration nor the effect of which could possibly be a bodily injury, certainly not, under the facts above recited, a bodily injury 'through \* \* accidental means.' There were no accidental means; all those employed were intentional."

What the court assumed was that the operation was a bodily injury, but not the anaesthetic, for neither the administration nor the effect of the anaesthetic could possibly be a bodily injury effected through accidental means, for they were intentional. The court did not expressly or impliedly overrule the Kelley Case in the Hesse Case.

In the case at bar, the insured was in normal and good health, not only doing his work daily without difficulty, but taking part in sports and athletics, swimming, golf, etc. He had streptococcic germs at the root of a tooth, as the evidence shows, but they were apparently walled-in or confined, and not doing any perceptible harm to him. Mrs. Lewis said: "He was in splendid condition. He was quite a healthy man, had a splendid physique. He was interested in all outdoor sports. He had been a baseball man and played golf, and was quite a swimmer, and always had been. He was quite a strong man." There are perhaps always germs of one kind or another in our body, confined, quiescent, and impotent, and may always remain so, but they are there, and we are apparently in perfect health. The presence of these germs in an apparently normal and healthy body is not a "disease" within the meaning of the policy. The policy does not provide that a body must be perfectly sound, free from every germ and defect, but it simply provides that it "does not cover death due to disease," such as those mentioned in the cases cited. Consequently the insured died as a result of bodily injuries directly and independently of all other causes by accidental means.

As to the second reason that the injury was not "immediately disabling," the accident occurred on June 15, 1930. Mr. Lewis continued to work as best he could, lying down and resting whenever possible until July 20th, (when he was out on a vacation until August 2, 1930), and from August 2 to August 19, 1930, when he was confined to his bed at home until August 23d. He was then taken to the hospital, where he died on August 29, 1930.

The defendant contends that, because the insured worked, or tried to work, as above stated, from June 15, 1930, to August 19, 1930, except for the two weeks' vacation from July 20 to August 2, 1930, the injuries were not "immediately disabling," and did not "result in continuous total disability from the date of the accident." Consequently, it says, the case is classified by the policy as one of sickness, and indemnity is payable only as provided in sections A and B of the policy at the rate of $25 per week, and not in the principal sum of $5,000, as provided under "Specific Losses," under section D of the policy.

That section provides that:

"D. Specific Losses. If such injuries result in continuous total disability from the date of the accident and within ninety days of the accident in any one of the losses named below, the Association, in lieu of any other indemnity, will pay for one and only one of such losses, as hereinafter limited.

"Death (including accidental drowning)
The Principal Sum."

The following cases in general terms support the appellant's contention on this point. Martin v. Travelers' Insurance Company, 310 Mo. 411, 276 S. W. 380, 41 A. L. R. 1372; Penquite v. General Accident F. & L. Assurance Corp., 126 Kan. 511, 268 P. 851; Lewis v. Preferred Accident Insurance Co., 151 Wash. 396, 275 P. 707; Thompson v. General Accident F. & L. Assurance Corp., 155 La. 31, 98 So. 746; Coburn v. Maryland Casualty Co., 224 Ky. 377, 6 S.W.(2d) 471; Southern Surety Co. v. Penzel, 164 Ark. 365, 261 S. W. 920; Robinson v. Masonic Protective Association, 87 Vt. 138, 88 A. 531, 47 L. R. A. (N. S.) 924. But every case depends on its own facts and the exact provisions of the policy.

There is no dispute as to the injury in the instant case. It is admitted that the insured died within ninety days after the accident, but there is a serious question as to whether or not the injury resulted in continuous total disability from the date of the accident. That was a fact to be established by the verdict of the jury under proper instruction of the court. The verdict shows that the jury found that Mr. Lewis was totally disabled from the date of the accident, and, if there is any substantial evidence to support the verdict, it is binding on us as to that fact, for the learned trial judge correctly submitted that question to the jury. He charged the jury that, before it could render a verdict for the plaintiff, it would have to find that the "accident brought about bodily injuries which resulted in a total disability from the date of the accident

and in his death within ninety days from the date of the accident," and that the plaintiff "has the burden of proving that the injury which resulted in the death of Malcolm F. Lewis resulted in continuous total disability from the date of the accident." The court then went on to say: "If you are satisfied by the proof in this case that those conditions exist, then it would be your duty to render a verdict for the plaintiff in the sum of $5,000.-00 plus interest on $5,000.00 from the 29th day of October, 1930, to the date of trial, and in such a case you would compute the amount of interest and add the interest to the $5,000.00 and bring in your verdict in favor of the plaintiff against the defendant for the total of that sum. If, on the other hand, the plaintiff has not made out a case which would entitle her to recover the total death indemnities arising under the policy, the defendant admits that it is liable in the sum of $42.-75 for disabilities resulting in disabling accidents and confining sickness. So if you are not satisfied under the proofs that plaintiff has made out a case which would entitle her to recover total death disability, then your verdict should be in favor of the plaintiff for the sum of $42.75."

It further said: "You have heard the depositions of the physicians read here, two of whom say that in their opinion the death in this case was the result of some trauma or injury which resulted in the dissemination of some poison that was in the abscesses in the teeth of the deceased, that this injury was the sole inducing efficient cause of the death, and that the injury was in fact disabling from the date of the injury. This is a question for your consideration."

In defining "total disability," the court said: "A man might work when he was really not able to, and he might have been totally disabled and should have kept away from work." The policy defines total disability to mean "inability to engage in any gainful occupation."

In this definition two words themselves require defining, "inability" and "engage" or "engage in."

"Inability" is defined by Webster as: "Quality or state of being unable; lack of ability; want of sufficient power, strength, resources, or capacity * * * inability ordinarily suggests an inherent lack of power to perform the thing in question."

"Engage" or "engage in" means "to take a part; to devote attention and effort; to employ one's self; to enlist; to carry on; to conduct; be busied; to occupy one's self."

Graves v. Knights of Maccabees of the World, 128 App. Div. 660, 112 N. Y. S. 948, 950. The words "engage in" signify much more than the doing of a single act. It imports continuity of practice or effort. White v. Sikes, 129 Ga. 508, 59 S. E. 228, 121 Am. St. Rep. 228; People v. Bright, 203 N. Y. 73, 96 N. E. 362, Ann. Cas. 1913A, 771. "To 'engage in business' is uniformly construed as signifying to follow that employment or occupation which occupies the time, attention, and labor for the purpose of a livelihood." Semple v. Schwarz, 130 Mo. App. 65, 109 S. W. 633, 636. "One cannot properly be said to be 'engaged' in a business unless there is to some extent a continuous occupation of his faculties and powers, directed toward the carrying on of the business as an object or purpose." Fleckenstein Bros. Co. v. Fleckenstein, 66 N. J. Eq. 252, 57 A. 1025, 1026. In harmony with this definition is the fact that the policy does not contain the provision found in most policies that "prevents him from performing any and every duty pertaining to his occupation" after the accident.

The jury had to decide on this phase of the question whether or not the insured had the power, strength, or resources to carry on, or engage in, as a continuous occupation, his work as train master.

The fact that a man works does not settle the question of his ability to work within the meaning of the policy. A person may work from sheer necessity when, as a fact, he is totally unable to work within the meaning of medical science. That is what the trial judge had in mind when he said, "A man might work when he really was not able to, and he might have been totally disabled and should have kept away from work."

The jury answered the question of the insured's ability to work in the negative, and found that he was totally disabled from the date of the accident, although he worked for some time thereafter.

The policy involved in the case of Booth v. United States Fidelity & Guaranty Co., 130 A. 131, 3 N. J. Misc. 735, provided for full indemnity if the insured met accidental injury which, independently and exclusively of all other causes, continuously and wholly disabled and prevented him "from the date of accident from performing any and every kind of duty pertaining to his occupation." The insured continued work for a month after the accident, and then became completely paralyzed. The Supreme Court of New Jersey in construing that policy said:

"In view of the nature of the contract and the object sought, it is a fair and reasonable construction to hold that, where the injury is such that the results continue from the date of accident and wholly incapacitate the assured within such time as is required for the processes of nature to bring about such total disability, there is a continuous and total disability, from the date of the accident. It is admitted in this cause that the condition which resulted in paralysis on June 20th was present immediately following the accident. To say that it did not wholly disable and prevent the insured from the date of the accident from performing his duties, because he endeavored to perform them, is to put a strained and unfair interpretation upon the term used, and to do violence to the obvious purpose of the contract. The fact that Booth tried to work is not to be taken as conclusive evidence of his ability to do so. On the contrary, the agreed facts leave no doubt that, from the time of injury, he was in a serious condition, and that prudence required that he refrain from all effort until he was cured. In the observation of all there have been instances where men have stuck to their posts long after ability was gone, and there are historic instances of dying men persisting in performing duty. Plaintiff should not be penalized for honest efforts to keep going when nature demanded that he desist. *    *

"It follows from the above that plaintiff was continuously and wholly disabled and prevented from the date of the accident from performing any and every kind of duty pertaining to his occupation. These views are supported by numerous cases."

With this reasoning we agree, for it might have been appropriately applied to the case at bar.

The judgment is affirmed.

### On Reargument.

This case is here on reargument. The jury rendered a verdict in the District Court for the plaintiff-appellee, who was beneficiary in a life insurance policy issued by the appellant on the life of her husband, Malcolm F. Lewis, on May 1, 1922. On appeal we affirmed the judgment. The policy was kept in force by the payment of annual premiums of $45 until his death on August 29, 1930.

On June 15, 1930, while bathing at White Fish Lake in the state of Michigan, Mr. Lewis, in diving, struck his head on the bottom of the lake and broke off part of one of his upper teeth. He began immediately to have dull headaches and a general disability, which increased in intensity until his death. He ran a temperature, sometimes as high as 104. On August 23, 1930, he was taken to a hospital, but he gradually became worse until he died six days later.

The policy insured against "loss resulting from (1) bodily injuries effected directly and independently of all other causes by accidental means *    *    * and due solely to external, violent and involuntary causes," but it did not insure against "death due to disease, whether accidental or otherwise." The policy also provided that loss resulting "from injuries not immediately disabling, shall be classified as sickness."

The appellant says that the District Court should have directed a verdict for it because:

(1) The loss was not effected directly and independently of all other causes by accidental means, for the reason that the insured had an abscessed tooth which had at its roots streptococcic germs which the injury disseminated through the body and brain, finally producing death.

But, under the facts in this case, we think the contention is untenable, for the reasons set forth in our former opinion, which need not be repeated here.

(2) The injury was not "immediately disabling," and did not result in continuous total disability from the date of the accident.

The policy provided that the insurance company would pay the principal sum of $5,000 for which the deceased was insured if his injury which caused death resulted "in continuous total disability from the date of the accident."

Was the injury "immediately disabling," and did it "result in continuous total disability from the date of the accident" within the meaning of the policy? The plaintiff says that it did. Counsel at the argument intimated, if he did not absolutely state, that, in addition to the evidence in the record tending to show such total disability, there was other testimony available which would show, or tend to show, total disability of the deceased, from the date of the accident, and that the duties of his office as train master of the Pennsylvania Railroad, which he ordinarily performed, were in fact performed by others.

Whether or not the record contains all the actual, available facts, we do not know, but, when the case was here before, we realized that at best it was on the borderline, and with considerable misgiving we affirmed the judgment of the District Court. On petition we allowed a reargument, and counsel for de-

fendant has convinced us that the record, as it now stands, does not show continuous total disability of the deceased from the date of the accident.

In view of all the facts, we feel constrained to set aside our judgment, reverse the judgment of the District Court, and award a new trial.