## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

Continental Casualty Company v. Peltier.

June 22, 1905.

1. Accidental Insurance—*Proximate Cause of Death—Disease—Supervening Accident.*—The evidence in this cause shows that the deceased upon whose life there was an accident policy, died of typhoid fever three weeks after receiving a personal injury such as was covered by the policy; that two weeks before the fever developed he had so far recovered from the injury as to be able to walk about and travel on the railroad, riding part of the way in the caboose of a freight train and saying that he was getting on finely and expected to go back to work in a few days.

   *Held:* There was no necessary or natural connection between the injury and the disease of which decedent died, and there can be no recovery on a policy insuring against bodily injuries effected through external, violent and purely accidental causes which should *solely and independently of all other causes necessarily result in his death*, within ninety days from the date of the accident.

2. Instructions—*Incompleteness.*—In order that an incomplete statement of the law in one instruction may be cured by a complete statement of it in another it must appear that when the instructions are read together the jury could not have been misled by the incomplete instruction.

3. Instructions—*Conflict—Directing Verdict.*—If an instruction directing a verdict leaves out of consideration an essential view of the case, and is in conflict with another instruction, a verdict in accordance with such first mentioned instruction should be set aside, as it is impossible for the court to say whether or not the jury were controlled by the erroneous instruction.

Error to a judgment of the Corporation Court of the city of Bristol in an action of assumpsit.    Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Bullitt & Kelly* and *W. F. Rhea,* for the plaintiff in error.

*W. H. Rouse, H. N. Bell* and *A. H. Blanchard,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

The defendant in error, plaintiff in the court below, brought this action to recover the sum of $1,500.00, the amount of a policy of insurance issued by plaintiff in error to William Peltier, payable to defendant in error, his wife, within a stipulated time after his death caused by accident, and the verdict and judgment in the court below was for the defendant in error for the amount of the policy, which judgment we are asked to reverse because of misdirection of the jury by the instructions given at the trial, and because the verdict is contrary to the law and the evidence.

William Peltier held what is known as an accident insurance policy, whereby plaintiff in error bound itself, among other things, to pay to his wife, defendant in error, the sum of $1,500.00 *"in the event of personal bodily injuries effected . . . through external, violent, and purely accidental causes, and if such injuries should solely and independently of all other causes necessarily result in his death within ninety days from the date of said accident."*

There were numerous other provisions in the policy, but they are immaterial to the issue in this case.

On the 12th of June, 1903, William Peltier, whilst engaged as a freight conductor on the Va. & S. W. R. R., received, in a railroad accident, injuries of the character contemplated in the policy, and as the result thereof was confined to his bed from the date of his injury until some time shortly before the 1st day of July following—the time of his actual confinement being variously estimated by the witnesses as from ten days to three

weeks.    At all events, the fact is undisputed that on the 1st day
of July, 1903, he applied in person at the office of the superin-
tendent of the Va. & S. W. R. R. Co. in Bristol for a pass to
use on a trip to Big Stone Gap, presumably walking from his
home, also in Bristol, to the superintendent's office, and cer-
tainly walking up two flights of stairs from the street to the
third story of the office building.    On the 3rd day of July he
used the pass and went to Big Stone Gap, and on July 5th
returned to Bristol, riding part of the way on a freight train,
climbing into and getting off the freight caboose without diffi-
culty, and telling his fellow-trainmen that he was getting on
finely, expected to go back to work in a few days, etc.    July the
18th or 19th, nearly three weeks after he had gotten up from
his injuries, and had been going about, he went to the office
of Dr. T. F. Staley, a reputable and competent physician, who
had attended him and treated his injuries, and complained of
headache and other symptoms.    After examining him, Dr.
Staley told him that he was threatened with typhoid fever, and
advised him to go home and go to bed, which he did.    On the
next day Dr. Staley saw him again, and found that his fears,
as expressed the day before, were well founded, and visited him
thereafter every day, and sometimes as often as three times
during the day, treating him all the while for typhoid fever,
until the patient died on the 16th day of August, 1903.

During the period between the 18th of July and the 16th
of August a physician of high standing in Bristol, who had
been called in consultation with Dr. Staley, saw the patient
twice, once about the 22nd of July, and again some two weeks
later, and fully agreed with Dr. Staley in his diagnosis of the
case.

It was the contention of defendant in error at the trial, that
the death of William Peltier was the direct result of the inju-
ries he received on the 12th of June, 1903; while plaintiff in
error contended that typhoid fever caused his death, that there

was no natural and necessary connection between his injuries and the disease, and that, in any event, his injuries were not such as to, and did not, *"solely and independently of all other causes necessarily result in death."*

After the evidence had been introduced, the court gave to the jury two instructions at the instance of defendant in error, and over the objection of plaintiff in error.   The first told the jury "that if they believed from the evidence that William Peltier, on the 12th day of June, 1903, received personal, bodily injuries from external, violent, and purely accidental causes, and as the direct result of such injuries as an exciting cause some disease was caused to set up in the body of William Peltier, which would not have happened or existed but for said injuries, and from which disease, caused as aforesaid, the said William Peltier died on the 16th of August, 1903, that in such case the said injuries would be the proximate cause of the death, and the defendant would be liable therefor under said policy.

"Where death results from any disease or cause which is the direct result of the injury, and which would not have happened but for the injury, in contemplation of law the original injury from which the intervening cause or disease springs, and without which it would never have existed, is the cause of the death."

This instruction is plainly erroneous.   There is no evidence whatever in the record tending to prove that William Peltier had any disease except typhoid fever.   Defendant in error, her father, and Dr. Staley testify as to the exact character and extent of his injuries.   The first two describe the kind and location of the injuries very much as Dr. Staley does, as being a fracture of the ninth and tenth ribs, bruises on the left side and hip and right knee, though the former refer to some symptoms and complaints confined chiefly to the first few weeks, which Dr. Staley says were not noticed by or known to him.

It is not controverted that typhoid fever is caused by a germ; that there is no necessary or natural casual connection

between such injuries as the deceased had sustained and the disease; and that the one could not produce the other. Dr. Edwards, introduced for defendant in error as an expert, does testify that if a man was injured so as to lower his vitality "it would rather increase his liability to take typhoid fever," but adds that a man could not take it without first having his system impregnated with the germ, and that there is no necessary and natural connection between an external injury and this disease. Upon this point all of the physicians testifying in the case are agreed, so that there was no evidence to warrant the jury in finding, as the instruction told them they might, that the disease from which William Peltier suffered and may have died was the direct result of the injuries he had sustained as an exciting cause, and which would not have happened or existed but for his injuries. The instruction was well calculated to mislead the jury into conjecture and speculation as to whether William Peltier died of his injuries, or from disease, or from both concurring.

But conceding that Dr. Edwards' evidence tended to prove that Peltier, by reason of his injuries, might have contracted the disease more readily than he would otherwise have done, the instruction ignores the plain provision of the policy sued on, that it covers only injuries which *"solely and independently of all other causes necessarily result in death,"* and erroneously assumes that the injuries alone caused the disease.

In *Nat'l. M. Acc. Ins., &c.,* v. *Shyrock,* 73 Fed. Rep. 774, 20 C. C. A. 3, the policy contained a provision practically identical with the provision in the policy in this case, above set out, and it was held that under a policy promising indemnity in case death results solely because of bodily injuries effected by external, violent, and accidental means, and independently of all other causes, the burden of proof is on those claiming under the policy to show that the accident was the sole cause of death independently of all other causes. In that case the disease, from which the insured suffered, pre-existed the accident, while

in this the disease supervened between the injuries and the death of the insured, but the principle is the same in each.    In either case the burden to be borne by the claimant of the indemnity was, that not only were the injuries sustained by the insured sufficient to cause death as a result, but that they did in fact produce death independently of any other concurring cause.

The second instruction given for defendant in error was as follows: "The court instructs the jury, that if they believe from the evidence that the insured, William Peltier, on the 12th day of June, 1903, through external, violent, and purely accidental causes, received personal bodily injuries, the reasonable and natural consequences of which resulted necessarily in the death of the said William Peltier, and that the said William Peltier died on the 16th day of August, 1903, that then they should find for the plaintiff, unless they should further believe from the evidence that the said William Peltier's death was not the proximate and direct result of said injuries, but was the result of some other cause or disease independent of said injuries."

Much that has been said with reference to the first instruction applies with equal force to the second.    The testimony of the attending and of the consulting physician is, that William Peltier had a typical case of typhoid fever, and no witness testifies to the contrary.    Instruction No. 2, just quoted, left the jury to infer that before any other cause than his injuries could be considered by them as a defense to the action, it must appear to have been independent of the injuries, thus leaving entirely out of view the provision in the policy that if disease or other cause supervening concurred with the injuries in producing death, the insurer was not liable for the indemnity.    Counsel for defendant in error admit that the instruction is imperfect, but insist that the imperfection is cured by an instruction given for plaintiff in error.    It is true that an incomplete statement of the law in one instruction may be cured by a complete state-

ment of it in another (*W. Alex. & Mt. V. Elec. Ry. Co.* v. *Quayle,* 95 Va. 741, 30 S. E. 391.), but it must appear that when the instructions are read together the jury could not have been misled by the incomplete instruction.

That is not this case. The instructions are inconsistent and contradictory of each other. Defendant in error's instruction, undertaking to state all the facts necessary to authorize a verdict against the insurer for the amount of the indemnity, leaves out of consideration an essential view of the case. It is im·possible for the court to say whether or not the jury were controlled by this erroneous instruction. *Richmond Pass. & Power Co.* v. *Steger,* 101 Va. 321, 43 S. E. 612, and authorities there cited; *C. & O. Ry. Co.* v. *Whitlow, ante,* p. —, 51 S. E. 182.

As the cause is, for the reasons stated, to be remanded, we do not think it proper to review the evidence farther than we have found it necessary in considering the instructions to the jury complained of, or to express an opinion as to its weight.

The judgment of the Corporation Court of the city of Bristol must be reversed and annulled, the verdict of the jury set aside, and the cause remanded for a new trial to be had in accordance with this opinion.

*Reversed.*