### John Buffo, Appellee, v. Mutual Benefit Health and Accident Association, Appellant.

### Gen. No. 8,514.

at the May term, 1932.

LUTHER F. BINKLEY and EARLY & EARLY, for appellant.

KARL C. WILLIAMS and WILLIAM D. KNIGHT, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

This suit was instituted by appellee on September 24, 1931, to recover under the provisions of an accident and health insurance policy issued by appellant. The declaration sets forth the policy *in haec verba* and alleges that appellee, on December 6, 1930, was accidentally thrown against the windshield of an automobile in which he was riding, whereby his right hand was severely cut and as a result thereof he is wholly disabled and will be permanently prevented from using his right hand and engaging in his business of peddling fruit and vegetables. The declaration then alleged that written notice and proof of injury was given to the defendant promptly and within 20 days after the accident, in accordance with the provisions of the policy; that all forms furnished by the defendant to the plaintiff and to his doctors were promptly and properly filled out and returned to the defendant and that affirmative proof of loss was furnished to the defendant at its office and by its agent in Rockford; that all premiums have been promptly

paid and all the terms of the policy required to be performed by plaintiff have been performed by him. To this declaration the defendant filed the general issue and several special pleas, by one of which it was averred that plaintiff failed to give appellant written notice of his supposed injury within 20 days after the date of the accident, as required by the provisions of the policy. The other special pleas averred that plaintiff's disability, if any, was due to an infection which did not continuously confine plaintiff within doors and did not require regular visits by a licensed physician at least once each week as required by the terms of the policy. Issues being joined, the case was submitted to a jury, resulting in a verdict and judgment for $712.50, from which defendant appeals. The defendant offered no evidence, and it is his contention in this court that the trial court erred in refusing to instruct the jury to find the issues for the defendant; that the trial court also erred in giving and refusing instructions and that the judgment is excessive.

The evidence discloses that appellee, a man 41 years of age, has been a buyer, seller and peddler of fruits and vegetables since he was 12 years old, and knows no other business. It was his custom to buy a carload or part of a carload of fruit or vegetables, which generally came in sacks or baskets, and he would then load them upon his truck and sell them, sometimes at wholesale and at other times in smaller lots to individual customers. On December 6, 1930, he was riding in his truck, which was used in his business and which was being driven by his son. For some unexplained reason, the truck stopped suddenly and he was thrown against the windshield, forcing his right hand through it and resulting in a cut in the shape of a horseshoe on the back of his hand, midway between the knuckles and the wrist. It was a deep, lacerated wound, extending through the skin, the superficial fascia, the

tendons and almost to the bone, necessitating 25 or 30 stitches. Immediately after the accident, appellee went to the hospital and had the wound dressed by a competent, licensed physician and surgeon and remained there overnight, returning to his home either the next day or the third day thereafter, and the physician continued to treat him from time to time. The third day a pus infection, resulting from the cut or wound, was observed and the hand was considerably swollen, as the infection penetrated a short distance up the hand and into the fingers, necessitating the application of boracic acid solutions every hour or two for a week or 10 days, delaying the healing of the wound for a little longer than two weeks, and the hand itself did not heal for several months. The physician testified that he treated the hand after the infection disappeared as often as once a week for two or three months, and after that his treatments were irregular, possibly every two weeks; that the tendons were severed and have separated, that his fingers are flexed and stiffened and useless as he has no strength or power to grasp with his fingers and his inability to use his hand will in time cause the muscles of his forearm to atrophy or shrink. The physician was unable to say whether the hand would have been restored to normal if there had been no infection. Appellee testified he had not been able to perform his customary work since the accident, and five men in the wholesale fruit and vegetable business testified that previous to the injury they had done business with appellee, observed him working regularly, but that since then they had had no business transactions with him, although they had seen him at their places of business and some observed that he could not use his right arm.

The evidence further discloses that in 1928, appellant issued the policy sued on, the application therefor being given to Charles I. Cummings, who testified that

he thereafter delivered the policy to appellee and collected the premiums thereon; that on December 6, 1930, he received a call over the telephone from the wife of appellee informing him that appellee had met with an accident and was in the hospital and she was notifying him so that he might in turn notify the company of the accident. Mr. Cummings thereupon telephoned the local office of appellant in Rockford and ascertained that Mr. Stone, the manager, was absent, but he talked to Mrs. Stone, who had charge of the office in the absence of her husband, and informed her that appellee had met with an accident and was at the hospital. Subsequently Cummings visited in the home of appellee, and observed his injured hand, and in March, 1931, Cummings had a conversation with Mr. Stone, in which Stone told him that within 20 days after the accident he had ''sent data of the accident to the Home Office to be taken care of.'' Appellee testified that he had several conversations with Stone, and at one time he had Mr. Cummings come to Stone's office and had Mr. Cummings write a letter to the home office, at which time Mr. Stone said: ''Why, I notified them right away, as soon as you was in the hospital, when they called up.''

It is first insisted by appellant that there is no proof in this record that appellee or anyone for him gave written notice to the company within 20 days after the accident, and the case of *Feder v. Midland Casualty Co.,* 316 Ill. 552, is relied upon in support of this contention. In that case, which was a suit to recover for an accidental drowning, it appeared that the husband of the beneficiary had a conversation with Nitz, the authorized agent of the company, a few days after the accident and inquired of him about collecting the insurance and was informed by the agent that the company refused to pay because the premium had not been paid. The court held that notice to Nitz was

a compliance with the requirement in the policy that required notice to be given to an authorized agent, but it was not a compliance with the provisions of the policy, which was the same as in the instant case, inasmuch as the notice so given was not written. In the instant case, the evidence discloses that Mr. Stone was the local manager of appellant, with an office in Rockford; that his office was notified of the accident on the day it occurred, and the uncontradicted evidence, which was admitted without objection, is that the local manager, Mr. Stone, afterward stated to the soliciting agent of appellant, Mr. Cummings, that he, Stone, "mailed written notice of the injury to the company within 20 days," and afterward also stated to appellee that he, Stone, had notified the home office of the accident while appellee was in the hospital, which must have been not later than the fourth day after the accident. Neither the statute nor the policy provides who should give this notice. All that is required is that written notice be given to the association at Omaha or to any authorized agent of the Association. Appellee is now claiming the benefit of Stone's act in giving this written notice and in our opinion, with this evidence in the record, there was no error in refusing to direct a verdict for appellant on the ground that appellee had failed to prove written notice to the company, as provided by the provisions of the policy, which is a standard provision prescribed by statute. Cahill's Revised Statutes of Illinois 1933, ch. 73, ¶ 469.

The policy of insurance sued on provides benefits to appellee for loss of time resulting directly and independently of all other causes, from bodily injuries sustained through purely accidental means and for loss of time on account of disease contracted during the term of this policy, respectively, subject, however, to all the provisions and limitations in said policy con-

tained. It stated that the monthly benefits were $75 with a maximum monthly benefit of $150. Parts A and B provide specific indemnity for loss of life, limb, etc., by reason of accidental injury. Then follows in capital letters:

"PART C.  TOTAL ACCIDENT DISABILITY.

SEVENTY-FIVE DOLLARS PER MONTH FOR LIFE.

"If such injuries as described in the Insuring Clause, do not result in any of the above mentioned specific losses, but shall wholly and continuously disable the Insured for one day or more, and so long as the Insured lives and suffers said total loss of time, the Association will pay a monthly indemnity at the rate of Seventy-five ($75.00) Dollars.

"PART D.  PARTIAL ACCIDENT DISABILITY.

THIRTY DOLLARS PER MONTH.

"If such injuries, as described in the Insuring Clause, shall wholly and continuously disable the Insured from performing one or more important duties, the Association will pay for the period of such partial loss of time, but not exceeding three consecutive months, a monthly indemnity of Thirty ($30.00) Dollars.

"ILLNESS INDEMNITIES

PART H.  CONFINING ILLNESS

SEVENTY-FIVE DOLLARS PER MONTH FOR LIFE

"The Association will pay, for one day or more, at the rate of Seventy-five ($75.00) Dollars per month for disability resulting from disease, the cause of which originates more than thirty days after the date of this Policy, and which confines the Insured continuously within doors and requires regular visits therein

by legally qualified physician; provided said disease necessitates total disability and total loss of time.

### "PART I. NON-CONFLICTING ILLNESS

#### THIRTY-SEVEN DOLLARS AND FIFTY CENTS PER MONTH.

"The Association will pay, for one day or more, at the rate of Thirty-seven Dollars and Fifty Cents ($37.50) per month, but not exceeding one month, for disability resulting from disease, the cause of which originates more than thirty days after the date of this policy, and which does not confine the Insured continuously within doors, but requires regular medical attention; provided said disease necessitates total disability and total loss of time.

### "PART K. COVERED AS SICKNESS

#### ALL DISEASES ARE COVERED BY THIS POLICY

"Any accidental injury, fatal or otherwise, resulting in hernia, boils, carbuncles, felons, abscesses, ulcers, infection, septicaemia, ptomaine poisoning, cancer, diabetes, fits, peritonitis, apoplexy, sunstroke, freezing, hydrophobia, sprained or lame back, shall be paid for as provided in Part H or I, anything to the contrary notwithstanding."

It is the contention of appellant that the evidence in this case discloses that the accidental injury complained of resulted in an infection and that therefore the provisions of Part K govern and the maximum liability of appellant would be $47.50, even though appellee is wholly and permanently disabled. This amount of $47.50 is arrived at by allowing appellee for four days' confinement under Part H at the rate of $75 per month, or a total of $10 and a further sum of $37.50 as provided in Part I. Appellant, in this connection, also refers us to additional provision A, which

provides that the policy does not cover disability or other loss sustained while the insured is not continuously under the professional care and regular attendance, at least once each week, beginning with the first treatment, of a licensed physician or surgeon.

Appellee insists that this policy indemnifies him first for loss of time resulting from an accidental injury, and second for loss of time resulting from sickness; that Part C of the policy controls as the evidence discloses that appellee suffered a total disability caused by an accident; that appellee's injury did not result in infection, but that by reason of his accidental injury, infection developed, resulting in a weakened hand, which wholly and continuously disables him and causes him to suffer total loss of time; that Parts H, I and K are found in the policy under the general head "Illness Indemnities" and are not applicable to the facts as disclosed by this record.

In *Order of United Commercial Travelers of America v. Edwards,* 51 F. (2d) 187, the certificate sued on provided that the certificate, constitution, by-laws, articles of incorporation, together with the application, should constitute the contract of the parties and one of the constitutional provisions was that the Order should not be liable "to any person for any benefits for any death, disability or loss of time by reason of any of the following conditions, whether caused by accidental means or not, to-wit: Appendicitis, . . . poisoning, . . . or any infection (unless the infection is introduced into by or through an open wound, which open wound must be caused by external, violent and accidental means and be visible to the unaided eye)." The evidence disclosed that on June 9, 1927, the insured accidentally fell out of an automobile and struck his side or lower abdomen against the running board; the blow left a red and inflamed mark which disappeared by the third day. The skin was not broken. An operation was performed the third day, and

the appendix, caecum and bowel were found to be gangrenous and highly infected; and four days later he died of a blood stream infection, a general septicaemia. In holding that there was no liability under the certificate, the court said that the insured's death was caused by an infection, that the infection was not introduced into his system through an open wound and that the clause expressly precluded any liability for death from infection whether caused by accidental means or not. Among the many cases cited and distinguished was *Central Accident Ins. Co. v. Rembe,* 220 Ill. 151, and in the course of its opinion the court said that the contract in many of the cases expressly provided that there should be no liability if death resulted directly or indirectly from disease, but that the courts had uniformly and correctly held that if the accident was the direct and sole cause of the disease, the accident was the proximate cause of death. The opinion then continued: "But none of the cases decided on this principle which we have examined contains the unusual clause here involved and which apparently is designed to avoid the doctrine of proximate cause,—the restrictive phrase 'whether caused by accidental means or not.' It is true that the phrase prevents recovery in many cases where an accident is the sole, proximate and only cause of death; but it is the contract which the parties made; it is clear and unambiguous and we have no alternative but to enforce it. The only reported case cited construing this unusual provision is *Order of United Commercial Travelers v. Dobbs* (Tex. Civ. App.), 204 S. W. 468, which is in accord with our conclusion."

As counsel for appellee points out, the courts have had frequent occasion to determine whether a disability was due to disease or to accident or to both, and there are many cases which announce the rule that where infection or blood poisoning is an excepted risk in an accident policy, still, if the resulting infection

or blood poisoning is the effect of the accident, so as to be a mere link in the chain of causation between the accident and the disability, then the disability must be attributed to the accident and is not excepted from the risk, the theory being that the disability or death in such cases is the result of the wound and that the infection is merely an incident to the original injury. *Central Accident Ins. Co. v. Rembe, supra.*

In our opinion, these questions do not arise upon this record as the evidence clearly discloses that the infection which developed was attributable to the wound and the disability, even though the infection may have been a contributing factor, resulted from the wound and the injury is the proximate cause of the disabled hand, the infection being a mere link, as expressed by many authorities, in the chain of causation between the accident and the disability. As we view the question presented by this record, however, it is not whether this injury was the proximate cause of the infection or whether the disability was a result of the infection, but after having determined that appellee sustained a disability as the result of the accidental injury and that it is compensable under the terms of the policy, the further question then arises as to the amount appellee is entitled to recover under all the provisions of the policy.

This policy says that any accidental injury, fatal or otherwise, resulting in hernia, boils, infection, cancer, diabetes, lame back or a dozen other ailments shall be paid for as provided in paragraphs H and I. Paragraphs H and I appear under the general heading "Illness Indemnities" and paragraph K therefore classifies an accidental injury resulting in any of these enumerated diseases as a disability due to illness and provides the amount the insured is entitled to recover. As said by the Circuit Court of Appeals in *Order of United Commercial Travelers v. Edwards, supra,* this construction narrows the protection afforded, but the

language is clear and we have no other alternative than to give it effect.

The instructions tendered by appellant and refused by the court were to the effect that if from the evidence the jury found that the bodily injuries received by appellee resulted in an infection, then plaintiff's recovery must be under Parts H and I of the policy. In our opinion it was error for the court to refuse these instructions and for that error the judgment is reversed and the cause remanded.

*Reversed and remanded.*