# Wytheville

## Mutual Benefit Health and Accident Association v. Nannie L. Ryder.

June 11, 1936.

Present, Holt, Hudgins, Gregory, Chinn and Eggleston, JJ.

The opinion states the case.

*James E. Heath* and *Smith R. Brittingham, Jr.,* for the plaintiff in error.

*A. A. Bangel* and *Martin Abraham,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

In this case is in issue the coverage of a health and accident insurance policy.

On May 21, 1934, the Mutual Benefit Health and Accident Association issued to Jessie Ryder its policy of insurance, naming therein as beneficiary his wife, Nannie L. Ryder. On September 29, 1934, he was assaulted by one Barnes. In defending himself the index finger of his right hand was lacerated. This wound was promptly bathed in an antiseptic solution, but did not respond to domestic treatment, and on October 10th a physician, Dr. Rawls, was called in. He found considerable pus and a great deal of inflammation in this finger and operated upon it. He continued treatment until November 18th, performing two other operations. They gave no relief and Dr. Babbitt was called in. He first amputated the finger and then the arm, but Ryder grew steadily worse and died on December 15, 1934. Dr. Babbitt said that death was due to local infection, streptococci, which entered the body through the open wound on the patient's finger. As a layman might express it, he died from blood poisoning.

This policy in part reads:

"TEN YEAR ANNUAL INCREASING POLICY

"THIS POLICY PROVIDES BENEFITS FOR LOSS OF LIFE, LIMB, SIGHT OR TIME BY ACCIDENTAL MEANS, OR LOSS OF TIME BY SICKNESS AS HEREIN PROVIDED

"MUTUAL BENEFIT HEALTH AND ACCIDENT ASSOCIATION

OMAHA

(Herein called Association)
DOES HEREBY INSURE

| Monthly Benefits ...$ 50.00 | Death Benefit .......$1,250 |
|---|---|
| Maximum Monthly Benefits ........$100.00 | Maximum Death Benefit ..........$2,500 |

"Sample Copy of the Most Liberal Policy Ever Issued.

"Insuring Clause Jessie Ryder (Herein called the Insured) of City of Portsmouth, State of Virginia, against loss of life, limb, sight or time, resulting directly and independently of all other causes, from bodily injuries sustained during any term of this policy, through purely Accidental Means (Suicide, sane or insane, is not covered), and against loss of time beginning while this Policy is in force and resulting from disease contracted during any term of this Policy, respectively, subject, however, to all the provisions and limitations hereinafter contained.

"ACCIDENT INDEMNITIES
SPECIFIC LOSSES
"PART A.

"If the Insured shall sustain bodily injuries as described in the Insuring Clause, which injuries shall, independently and exclusively of disease and all other causes, continuously and wholly disable the Insured from the date of the accident and result in any of the following specific losses within thirteen weeks, the Association will pay:

For Loss of Life ..........................$1,250.00
For Loss of Both Eyes .....................$1,250.00
For Loss of Both Hands ....................$1,250.00
For Loss of Both Feet .....................$1,250.00
For Loss of One Hand and One Foot ........$1,250.00
For Loss of Either Hand ...................  350.00
For Loss of Either Foot ...................  350.00
For Loss of Either Eye ....................  250.00"

In "Part B" provision is made for "DOUBLE SPECIFIC LOSSES" and in it this appears: "Only one of the amounts named in Parts A and B will be paid for injuries resulting from one accident, and shall be in lieu of all other indemnity."

Has plaintiff brought herself within that provision of

the policy under which for a named specific loss she is to be paid a certain named sum?

It is scarcely necessary that we restate these elementary rules, although they should be continually remembered. Where there is doubt as to construction of policies, the insured is favored, but like other contracts they are to be construed as written.

One who assaults another, or voluntarily enters into an affray and is hurt, has not suffered an accident. But if assaulted he may defend himself. Any injury which he sustains in so doing is accidental. *Travelers' Ins. Co.* v. *Dupree,* 17 Ala. App. 131, 82 So. 579; *Lovelace* v. *Travelers' Protective Ass'n,* 126 Mo. 104, 28 S. W. 877, 30 L. R. A. 209, 47 Am. St. Rep. 638; *Accident Ins. Co.* v. *Bennett,* 90 Tenn. 256, 16 S. W. 723, 25 Am. St. Rep. 685; 1 C. J., p. 431.

Ryder did not die of a cut finger, but from the poison of germs which entered his system through that open gateway.

"Blood poisoning resulting from an accidental wound or abrasion is within' the protection of an accident policy; but it is otherwise where the wound or abrasion is not an accidental injury within the meaning of the policy." 1 C. J., p. 430.

In *Order of United Commercial Travelers* v. *Edwards* (C. C. A.), 51 F. (2d) 187, 190, it was said: "* * * if death is caused by an infection which is introduced through an open and visible wound, there is liability," although that case was reversed for reasons which do not touch this principle.

In *Business Men's Acc. Ass'n* v. *Schiefelbusch* (C. C. A.), 262 F. 354, 356, we are told that the plaintiff was bald-headed and perspired freely in hot weather. He rubbed his head with a soiled towel from which septic infection followed. The streptococcus germ was present there as it is present here. The judgment of the district court was affirmed. Carland, circuit judge, said: "We are therefore of the opinion that the death of deceased was caused by accidental means."

*Nax* v. *Travelers' Ins. Co.* (C. C.), 130 F. 985, is a case in which the claimant cut himself in trimming a corn. Blood poisoning followed and he died. It was held to be an accidental injury. "After full consideration, we are of opinion the court would have erred in taking this case from the jury. That the injury in question was an accidental, external and violent injury accords not only with our own views, but with well-considered cases, of which it suffices to cite *Western Commercial Travelers' Ass'n* v. *Smith,* 85 F. [401], 405, 29 C. C. A. 223, 40 L. R. A. 653." The *Nax Case* was reversed [C. C. A.] (142 F. 653), but for want of timely notice.

*French* v. *Fidelity & Casualty Co.,* 135 Wis. 259, 115 N. W. 869, 874, 17 L. R. A. (N. S.) 1011, is a leading case. French, a passenger conductor, struck his leg on an iron safe, causing an abrasion of the skin. Septic poison set in and he died therefrom. The court said: "The contention is that the accidental injury of itself would not have resulted fatally, but that death was due to an independent intervening cause, namely, the germs which entered the system through the wound. It must be apparent, however, that but for the accidental injury there would have been no cause for infection; that, but for the abrasion, the disease germs could not have entered and produced the fatal result. The wound produced by the accident was therefore the proximate and sole cause of death."

A like conclusion on almost the same state of facts was reached in *Cary* v. *Preferred Accident Ins. Co.,* 127 Wis. 67, 106 N. W. 1055, 5 L. R. A. (N. S.) 926, 115 Am. St. Rep. 997, 7 Ann. Cas. 484. See also, note, 5 Ann. Cas. 87; *Ballagh* v. *Interstate Business Men's Accident Association,* 176 Iowa 110, 155 N. W. 241, 157 N. W. 726, L. R. A. 1917A, 1050; *Ocean Accident & Guarantee Corp., Ltd.* v. *Glover,* 165 Va. 283, 182 S. E. 221.

This wound accidentally suffered and afterwards infected and from which death followed brings the plaintiff within the provision of "Part A" of her policy. Infec-

tion suffered was not the proximate cause of death but was a link in the chain of causation.

Payment for this specific loss in the language of the policy "shall be in lieu of all other indemnity," which would appear to end this case, but it is contended that this is not so because of these subsequent policy provisions:

### "ILLNESS INDEMNITIES
### CONFINING ILLNESS BENEFITS FOR LIFE

"PART K.

"The Association will pay, for one day or more, at the rate of Fifty ($50.00) Dollars per month for disability resulting from disease, the cause of which originates more than thirty days after the effective date of this policy, and which confines the Insured continuously within doors and requires regular visits therein by legally qualified physician; provided said disease necessitates total disability and total loss of time.

### "NON-CONFINING ILLNESS TWENTY-FIVE
### DOLLARS PER MONTH

"PART L.

"The Association will pay, for one day or more, at the rate of Twenty-five ($25.00) Dollars per month, but not exceeding three months, for disability resulting from disease, the cause of which originates more than thirty days after the effective date of this policy, and which does not confine the Insured continuously within doors but requires regular medical attention; provided said disease necessitates total disability and total loss of time.

### "SPECIAL COVERAGE

"PART M.

"Any accidental injury, fatal or otherwise, resulting in hernia, boils, carbuncles, felons, abscesses, ulcers, infection, ptomaine poisoning, cancer, diabetes, fits, peritonitis, apoplexy, sunstroke, freezing, hydrophobia, sprained or

lame back, shall be paid for as provided in Parts K or L, anything to the contrary notwithstanding."

"Part A" and "Part B" deal and apparently deal finally with death benefits, after which follow many provisions relating to accident disability and to illness indemnity. Sandwiched among these is "SPECIAL COVERAGE, PART M."

It is said that there can be no doubt what is meant by "any accidental injury, fatal or otherwise, resulting in * * * infection," and that in such a case payment is to be made under "Part K or L," which is to be in full of every promise.

Defendant in error contends that the right of recovery given to her by "M" is not exclusive of rights theretofore conferred but extends the coverage of "K" and "L" to meet possible conditions not already provided for.

We have seen that incidents may be accidents within the purview of the policy, although there are intervening links in the chain of causation which lead to final results. On the other hand, if an accident co-operates with some pre-existing disease or bodily infirmity and produces results which but for them it would not have produced, there is no liability. On this subject the leading case probably is *National Masonic Acc. Ass'n* v. *Shryock* (C. C. A.), 73 F. 774, 775. Judge Sanborn states the rule to be:

"The burden of proof was upon the defendant in error to establish the facts that William B. Shryock sustained an accident, and that that accident was the sole cause of his death, independently of all other causes. If Shryock suffered such an accident, and his death was caused by that alone, the association agreed, by this certificate, to pay the promised indemnity. But if he was affected with a disease or bodily infirmity which caused his death, the association was not liable under this certificate, whether he also suffered an accident or not. If he sustained an accident, but at the time it occurred he was suffering from a pre-existing disease or bodily infirmity, and if the ac-

cident would not have caused his death if he had not been affected with the disease or infirmity, but he died because the accident aggravated the effects of the disease, or the disease aggravated the effects of the accident, the express contract was that the association should not be liable for the amount of this insurance. The death in such a case would not be the result of the accident alone, but it would be caused partly by the disease and partly by the accident, and the contract exempted the association from liability therefor."

Cited with approval in *Continental Cas. Co.* v. *Peltier,* 104 Va. 222, 51 S. E. 209.

This principle was applied in *White* v. *Standard Life & Acc. Ins. Co.,* 95 Minn. 77, 103 N. W. 735, 884, 5 Ann. Cas. 83. The insured broke his thumb and as a result thereof died within ten days thereafter. He was at that time suffering from diabetes, which co-operating with the injury directly contributed to the fatal result. The right to recover was denied. Diabetes is mentioned in "M."

It was again applied in *Kerns* v. *Aetna Life Ins. Co.* (C. C. A.), 291 F. 289. Kerns swallowed a piece of metal in November, 1919. That bit of metal had become incapsulated, quiescent, and harmless. It was dislodged by a fall in 1920, which brought about reinfection, causing abscesses and death. The court held that death was not caused by an accident alone but by its co-operation with an existing dangerous condition, and denied recovery. Abscesses are mentioned in "M."

In *Sharpe* v. *Commercial Travelers' Mutual Acc. Ass'n,* 139 Ind. 92, 37 N. E. 353, death came from a rupture of the heart caused by a fall upon slippery pavement. It was held that death was not due to the fall, but to diseased heart conditions already existing.

This principle was recognized in *Freeman* v. *Mercantile Mutual Acc. Ass'n,* 156 Mass. 351, 353, 30 N. E. 1013, 17 L. R. A. 753. The insured fell, was injured and died of peritonitis. It appears that he had previously suffered from that trouble and had recovered, although conditions

remaining made him more liable to its recurrence. A recovery was sustained, although the court said it would not have been permitted had he been suffering from peritonitis at the time of the accident. Peritonitis is mentioned in "M."

From these cases it follows that an illness may follow an accident on which there can be no recovery for accidental disabilities, although there might be a recovery in the nature of sick benefits.

Of course insurers in plain language may limit or extend coverage at their election. *United Security Life Ins. & Trust Co.* v. *Massey,* 159 Va. 832, 164 S. E. 529, 167 S. E. 248, 85 A. L. R. 306.

They may promise to pay whether the situation following an accident be aggravated by conditions antecedent or subsequent. Such an unconditional promise would not curtail but would extend the limits of liability. If there could be no recovery because of antecedent conditions then in such a case "Part M" as a limitation of liability would have been unnecessary.

The distinction between an antecedent illness made acute by an accident and subsequent diseases, which are but links in the chain of causation, is done away with.

Until "Part M" was written the character of illness and its origin was a jury question. It has also removed that hurdle from the path of the insured.

The contention of defendant leads us to results unlooked for and curious.

If a leg were amputated, specific payment would have to be made but not if some cancerous condition was found. The presence of a felon might defeat specific recovery for the loss of both legs. One might lose his arm and sprain his back in the same accident. Such provisions in the face of a definite promise to pay a named sum "in lieu of all other indemnity," if not unintelligible, are at least staggering.

One can not in the same policy for one accident promise to pay a certain sum and then reduce it by another method

of calculation which may and does in the instant case reduce it to practically nothing. "Special Coverage" is not more specific than "Special Loss." Death benefits for accidents suffered in vocations of unusual hazard may by policy stipulations be reduced. That was not here done and manifestly was not in mind. Defendant has substituted for them a mode of compensation which logically is applicable to sick benefits alone.

Space forbids the discussion of those many cases cited on behalf of the defendant. Among them and said to be in point are:

*Pacific Mutual Life Ins. Co.* v. *McCabe,* 157 Ky. 270, 162 S. W. 1136, 1138. McCabe was hurt, the wound got better, he applied for and was paid a disability benefit. Afterwards he died and an autopsy showed that he suffered from a ruptured colon. It was said:

"Their testimony warranted the jury under the facts in concluding that the fall caused the injury to the colon, and the injury to the colon caused the effects they found in the body of the deceased, for the insured was never well after the accident."

It was held that the collection of a disability benefit did not prevent a recovery by his beneficiary for the loss of life, and that peritonitis resulted directly from the accident. This holding is in harmony with the conclusion which we have reached.

In *Scales* v. *National Life & Acc. Ins. Co.* (Mo. App.), 186 S. W. 948, 950, the court but laid down this rule recognized as we have seen in *United Security Life Ins. & Trust Co.* v. *Massey, supra:*

"Provisions in accident insurance policies, excepting certain classes and kinds of injuries or causes of death, are recognized as valid and binding contracts and provisions by the courts of Missouri and elsewhere."

In *Harrington* v. *Interstate Business Men's Acc. Ass'n,* 210 Mich. 327, 178 N. W. 19, an accident policy was issued to Harrington for $5,000. In it was this provision: "The insurance provided for loss by accidental means shall be

reduced and the liability of the association shall not exceed: * * * (2) Five hundred dollars ($500) if the loss be caused by * * * (b) asphyxiation by any kind of gas. * * *" Harrington was asphyxiated and a recovery of only $500 was permitted to stand. The contention in that case is that he was not asphyxiated as defined by a policy provision. That was the only defense there made.

In *Order of United Commercial Travelers of America, Inc.* v. *Edwards* (C. C. A.), 51 F. (2d) 187, 188, it appears that "the insured accidentally fell out of an automobile and struck his side or lower abdomen against the running board; the blow left a red and inflamed mark, which disappeared by the third day. The skin was not broken. A doctor was called the third day after the accident, and discovered a mass in the region of the caecum and the appendix; that night the insured was operated on. The appendix, the caecum and the bowels were gangrenous and highly infected. Four days later he died of a bloodstream infection, a general septicemia."

The constitution of the Order declared that it should not be liable for death "whether caused by accidental means, or not, to-wit: Appendicitis * * * poisoning, * * * or any infection (unless the infection is introduced into, by or through an open wound, which open wound must be caused by external, violent and accidental means and be visible to the unaided eye). * * *"

The court said that death from appendicitis as contended for was a debatable question, and although undoubtedly caused by infection that this infection was not introduced through an open wound and a recovery was denied.

There are expressions in these opinions which tend to sustain the defendant's contention. As reasons therefor they are entitled to weight but are not conclusive.

Reliance is placed upon *Buffo* v. *Mutual Ben. Health & Acc. Ass'n,* 274 Ill. App. 114, where this policy was under review. Buffo's hand was cut in an automobile accident and became infected. He recovered a judgment for

$712.50, that being the sum to which he was entitled under policy provision "Part D," where provision is made for total accidental disability, temporary or permanent. The judgment of the trial court was reversed, and his recovery was limited to $47.50, due by virtue of "Part M." The court said that the language was clear and shifted the recovery from the class of accidents to the class of illness. It is contended that the principle here applied applies equally to death claims.

At the risk of repetition we again invite attention to the policy itself and to its framework.

Parts A and B deal with a death loss and purport to deal finally with such a claim. Then follow provisions for disability benefit which in number threaten to exhaust the possibilities of the alphabet. One line in "Part M" again takes up accidents which are fatal, sets aside all that has been said, and in this case wipes away the right to recover. Such at least is the claim now made and it is a fraudulent claim.

We restate in short form our conclusions. "Part M" was intended to give to the insured in certain circumstances coverage under "K" and "L" not theretofore granted. A man may be sick and then die.

If this be not the purpose of "M" then in the instant case it is a fraud upon the insured.

The purpose to keep apart injuries and their consequences from ordinary sickness as to sources from which recovery may be had is manifested again and again in the policy. In its insuring clause they are "respectively" dealt with.

The judgment appealed from should be affirmed, and it is so ordered.

*Affirmed.*