## LAW AND EQUITY COURT OF THE CITY OF RICHMOND

Alfred H. Bernhard

    v.

Travelers Protective
Ass'n of Am.

February 15, 1968

Case No. A-8284

By JUDGE ALEX H. SANDS, JR.

    The facts in this case are simple and, for the most part, are not in dispute. Plaintiff, as a result of an accidental fall occurring on April 13, 1965, sustained an injury to his low back. The following day he sought and received medical assistance and on April 22 was admitted to Richmond Memorial Hospital where, on April 26, he underwent surgery at the hands of Doctors Daner and Velo. The operation disclosed a ruptured disk which was directly caused by the fall of April 13 and disclosed also evidence of joint instability at levels L3 and L4 which Dr. Daner believed to have been brought on by an old injury.

    The protrusion of the disc was cut away, a fusion performed, and plaintiff was released from the hospital to return home on May 4, to complete bed rest. Plaintiff was readmitted to the hospital on January 17, 1966, and a second operation performed, this time in the area of the disc just above the one operated on and another fusion attempted.

The evidence conclusively establishes that plaintiff was "immediately, continuously and wholly disabled" in contemplation of the provisions of the policy in question from the date of the accident up until the present time. In 1961 plaintiff had strained his back while lifting, or attempting to lift, a heavy water tank, had suffered for some three days with his back and had had no further difficulty, according to plaintiff, from that time up until the date of the accident here under review. From 1961 up to the time of the accident here in issue, however, plaintiff suffered occasional leg pain for which there is no medical explanation in the evidence although the plaintiff, himself, attributes it to a condition of "shingles."

On August 10, 1956, plaintiff applied for and received a Class "A" Certificate of Membership in defendant Association, which certificate provided that the plaintiff, so long as he was a member in good standing, would be entitled to such benefits as were provided in the Constitution, By-Laws and Articles of Incorporation of the Association.

Article X, sec. 5, of the Constitution provided:

Whenever a Class A member of this Association in good standing shall through external, violent and accidental means receive bodily injuries which shall independently of all other causes immediately, continuously, and wholly disable him from transacting any and every kind of business pertaining to his occupation as shown by the records of this Association, he shall, upon compliance with and subject to the other provisions, conditions and limitations of this Constitution be paid for the loss of time occasioned thereby the sum of $25.00 per week, not exceeding one hundred and four consecutive weeks . . . .

It is under this provision that plaintiff asserts his claim.

### Defendant's Position

The evidence conclusively establishes the occurrence of the accident substantially in the manner alleged by the plaintiff and the existence of a condition of total disability of plaintiff during the maximum period of compensation under the terms of the defendant's contract. Defendant does not challenge either of these factual findings but relies upon two policy defenses. First, defendant contends, plaintiff failed to notify the defendant of the event alleged to have caused the injury within the period prescribed in the contract[1] and second, it is contended that under the evidence in the case the accident of April 13, 1965, was not the sole and independent cause of plaintiff's condition in contemplation of Article X, sec. 5, of defendant's Constitution. These defenses will be considered in the order named.

### (a) Late Notice

The accident in question occurred on April 13th and the uncontradicted evidence is that plaintiff was in acute and constant pain from the moment of his fall until his admission to the hospital on April 22nd and then until he was operated upon on April 26th. For some five days immediately following his operation he was relatively free of pain though it is clear from the evidence that he was under sedation in some degree during this period. By May 4th, when he was discharged from the hospital to return home for further bed rest, however, the pain had returned and persisted until a second operation became indicated the following year and this in spite of the fact that his discharge summary indicated that he could return to work in a month or less.[2]

Around the end of July, 1965, plaintiff, still confined to bed, notified his secretary to locate his various accident policies and to give each company notice thereunder. Whether defendant company was notified by plaintiff's

---

[1] Article XII, Sec. 5, of the defendant's Constitution.

[2] See Defendant's Exhibit # 9.

secretary or by his attorney is not clear, but suffice it to say that defendant received its first notice of the accident on August 17th which was more than three months after the accident.

Plaintiff points to the "escape clause" in the notice provision which reads:

> unless it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible.

and contends that due to the agonizing physical condition under which he was suffering up to and through the time of notice that notice was given as soon as "reasonably possible" in contemplation of this provision of defendant's Constitution.

In reply, defendant urges that plaintiff enjoyed some five days of comparative freedom from pain immediately following the first operation and had ample opportunity to give notice during this period and that in any event that there was no justification for the delay of some three weeks after he had communicated notice to other companies with policies covering him around the end of July.[3]

Was it "reasonably possible" for plaintiff to have notified defendant of the accident within thirty days after its occurrence and, if not, did he in fact notify defendant as soon as was "reasonably possible"? The same considerations dictate the answer to this question as are applicable to cases where the policy language requires notice "within a reasonable time"[4] or "as soon as practicable."[5]

That provisions in policies of insurance requiring assureds to give notice of an accident to the company within a reasonable time after an accident are reasonable

[3] July 30th. See Defendant's Exhibits # 1 and # 2.

[4] See State Farm Mutual Ins. Co. v. Douglas, 207 Va. 265 (1966).

[5] See State Farm v. Arghyris, 189 Va. 913 (1949).

and enforceable is firmly established in Virginia,[6] and performance of such provisions is regarded as a condition precedent to the right of recovery.[7]

It is equally true, however, that there is no hard and fast criterion which can be applied to determine what is a "reasonable time," for the circumstances of each case differ and the answer in each case must depend upon the circumstances of the particular case.[8]

Thus, a delay of five months,[9] two years,[10] two months,[11] has been held "reasonable," while in at least two cases, under the particular facts of the case a delay of two months was held unreasonable.[12]

Turning to the facts in the case at hand, the evidence conclusively establishes that plaintiff was experiencing severe pain from the moment of his accident of April 13, 1965, until the end of the summer of 1965, with the exception of the five days following his initial operation and according to the evidence he was under sedation during this five-day period. Not only does the testimony of the medical witnesses, Drs. Daner, Melhorn and Stevens attest to the ordeal through which plaintiff was struggling for

[6] Mason & Dixon, Inc. v. Casualty Co., 199 Va. 221 (1957).

[7] Temple v. Va. Auto Mut. Ins. Co., 181 Va. 561 (1943).

[8] State Farm Ins. Co. v. Douglas, 207 Va. 265 (1966); 29A Am. Jur. p. 495.

[9] Mason & Dixon, Inc. v. Casualty Co., supra, (Plaintiff sustained fractured skull, broken cheekbone and other serious injuries and was hospitalized for six weeks).

[10] Temple v. Va. Auto Mutual Co., supra, (Plaintiff's administrators did not discover coverage existed for two years after death of decedent assured due to an error on part of defendant).

[11] State Farm Ins. Co. v. Douglas, 207 Va. 265 (1966), (Plaintiff claimed he was unable to sooner get-his cousin, a passenger in his car at the time of the accident, to fill out accident report form).

[12] Yonago v. Aetna Ins. Co., 164 Va. 258 (1935); Hunter v. Hollingsworth, 165 Va. 583 (1936).

the first six months after the accident, but the lay testimony of Miss Patterson, Mrs. McMullen and plaintiff's sister, Anna Bernhard, bears witness to the degree of intensity of the pain being experienced by plaintiff during this period.

Miss Bernhard testified that for a long while following his return home from his first operation that he stayed in a darkened room, would not converse with anyone, and that he was disturbed by the least noise. Dr. Daner testified that as late as July 27th, when plaintiff came to his office for X-rays, that he was on crutches and in such severe pain that he had to be stretched out upon the operating table and that at this time marked atrophy was noticed in the muscles of the left thigh.

In summary, it is felt that plaintiff's condition following his accident was sufficient justification for his failure to notify defendant of accident until August 17th and that under the circumstances it was "not reasonably possible to give notice of the accident within thirty days after the accident" and that "notice was given as soon as was reasonably possible" in contemplation of the language of the policy (Constitution).

### (b) *Causation*

As a condition precedent to recovery the burden is upon plaintiff to prove that his condition of disability resulted from his fall of April 13th "independently of all other causes." There is no question but that the onset of plaintiff's present condition was at the time of the fall. It is further uncontradicted that prior to the accident of April 13th plaintiff had at no time experienced any difficulty in performing the duties of his medical practice which required considerable physical effort upon his part. Dr. Daner testified emphatically that it was his medical opinion that the disc rupture sustained by plaintiff in his fall on April 13th was the direct cause of plaintiff's disability and that the disabling pain following the accident was caused by the accident and came from no prior condition.

Dr. Daner further testified, however, that at the time he performed the initial operation that he observed an obvious joint instability at the level of L3 (the area

involved in the accident of April 13th) which he attributed to a strain which plaintiff suffered in 1961.[13] While Dr. Daner felt that this condition of instability was not causally related to the injury received on April 13th, yet he admitted that an unstable joint whether it be the result of an old injury or the result of normal degenerative changes renders the disc more susceptible to injury.

This situation poses the question of whether such preexisting condition qualifies as an "other cause" so as to bar coverage under the language of the policy (Constitution). Defendant contends that such preexisting condition does so qualify and this constitutes the second defense to plaintiff's action.

There exists a plethora of outside authority upon this question widely split as to conclusions reached.[14] A review of the Virginia authorities produces no case directly in point but does furnish certain guidelines. The majority rule, which Virginia appears to follow, is that there can be no recovery under a clause similar to that in the contract here involved where insured has a preexisting physical condition which *contributes to produce the injury*.[15] The determination of when the underscored qualification does and when it does not exist is always the problem.

Where the immediate cause of death or injury is a condition following the accident, the test in determining whether or not the accident is compensable is whether there is a necessary or natural connection between the accident and the condition resulting in injury or death. Where such connection exists, the accident is regarded

---

[13] The uncontradicted evidence is that in 1961 plaintiff had strained his back in lifting a water tank, that his back had "bothered" him for two or three days, that he had missed no time from work as a result of it and had had no trouble with it since. He has had pain in his leg from time to time since 1961 which he attributed to shingles.

[14] See the exhaustive note in 84 A.L.R.2d beginning at page 196. The majority rule, which Virginia appears to follow, is that there can be no recovery under a clause similar to that in the contract here involved where the insured has a pre-existing physical condition which contributed to produce the injury.

[15] Crowder v. Gen. Accident Corp., 180 Va. 117 (1942).

as the independent cause of the death or injury, the subsequently occurring condition immediately causing injury or death being considered but a link in the chain of causation.[16] Where such connection is absent the subsequently resulting condition and not the accident is considered the independent cause of the death or injury.[17]

Where the alleged contributing factor is of a preexisting nature the same reasoning is applied. If the infirmity alleged to have preexisted the accident substantially, in its own right, contributes to cause the injury, then the accident is not the cause, "independently of all other causes" of the injury and recovery under an accident policy with provisions similar to those here considered, is barred.[18] Where an alleged preexisting infirmity, even though established to exist, is not proven to have substantially contributed with the accident to cause the ensuing injury, the accident is regarded as the independent cause of the injury.[19]

Applying these principles to the evidence introduced in the instant case we turn to the testimony of Drs. Stevens and Daner.

The testimony of Dr. Stevens is of little probative value as he says, quite frankly, that his views as reflected in his discharge summary of May 14, 1965, are based entirely upon information given him by others as he is not an orthopedist. Dr. Daner's evidence comes to us in three ways, first, through his discharge summary on plaintiff (Defendant's Exhibit # 9), second, his letter of October 21, 1965, addressed to National Casualty Company (Defendant's Exhibit # 5), and lastly, his testimony given at trial. This witness performed the operation for the removal of the ruptured disc and has had plaintiff under his care since that date. His opinion very emphatically expressed, is that the disc which was ruptured in plaintiff's fall

---

[16] Mutual Benefit Health & Acc. Ass'n. v. Ryder, 166 Va. 446 (1936).

[17] Continental Cas. Co. v. Peltier, 104 Va. 222 (1905).

[18] Crowder v. Gen. Acc., etc., Corp., 180 Va. 117 (1942).

[19] Mutual Benefit, etc., Ass'n. v. Hite, 184 Va. 614 (1945).

of April 13th is the direct and only cause of plaintiff's present condition. He concludes his letter of October 21st, 1965, to National Casualty Co. (Defendant's Exhibit # 5) with this observation:

> It was my understanding that Dr. Bernhard had received some injury to his back several years ago but apparently made a very satisfactory recovery. *His acute symptoms dated from April of 1965.* (Emphasis added.)

Upon direct examination at trial he testified:

> The pain (the cause of plaintiff's disability) came from the ruptured disc and *from no prior condition.* (Emphasis added.)

Upon cross examination he testified that upon the occasion of the removal of the ruptured disc he found a condition of instability which preexisted the accident of April 13th, in plaintiff's lumbar region in the area of L3 and L4 but that in his opinion this was disassociated with plaintiff's condition of disability and had no direct causal connection therewith. He did testify that any condition of instability whether of old traumatic origin or whether the result of natural degenerative processes would render a joint more easily susceptible to injury. He further testified that the instability which he found present in plaintiff's lumbar spine was similar to that caused by the natural degenerative processes found to begin in most persons at age thirty-five and which increase with age. He attributed this condition of plaintiff, however, to the back strain experienced by plaintiff in 1961 which is referred to in Defendant's Exhibit # 5. It is undoubtedly true, as defendant points out, that there is possibly inconsistency between Dr. Daner's recital of facts under the heading "History" in his discharge summary of plaintiff dated May 4, 1965, (Defendant's Exhibit # 3-A), and his statements both in his letter of 21st October, 1965, (Defendant's Exhibit # 5), and in his testimony at trial. If there is any inconsistency it is due to the fact that in his "History" analysis his recitals are based on information given him by plaintiff,

whereas his statements in his letter of October 21st and his testimony at trial are based upon his own medical findings. There is no doubt as to his medical opinion based upon his findings. This opinion he states to be that while plaintiff had a degree of instability in his back which rendered him potentially more susceptible to injury, that the sole and direct cause of the present injury was the accident of April 13th.

The facts in this case are not dissimilar to those in *Sterling Insurance Co. v. Grant*, 199 Va. 539 (1957). There plaintiff was injured in a train accident in 1953 and shortly thereafter she lost her voice which totally disabled her from pursuing her vocation of teaching. In a suit upon an accident policy covering injuries effected "solely through accident," plaintiff introduced one doctor who said he "would judge" that the loss of voice was the result of the injuries received in the train accident but "was not certain." Defendant introduced three doctors, two of whom testified that the train accident was not the sole cause of the injury but merely triggered an abnormal mental condition brought about in a prior automobile accident and that the combined effect of the two accidents caused plaintiff to lose her voice. As weak as was the testimony of plaintiff's doctor, the Supreme Court permitted a jury's verdict predicated thereon, to stand saying:

> Dr. Stuart (plaintiff's doctor) did not, in so many words, testify that plaintiff's loss of speech was caused solely by the injuries received in the train accident, but clearly that was the purport of, or the inference to be drawn from his testimony. It will be observed that he did not in any way attribute it to or associate it with, the injuries which she had received in the prior automobile accident.

The Court in the instant case sitting as the trier of fact can and does accept the testimony of Dr. Daner that the injury from which the plaintiff is suffering is the direct result of the ruptured disc which, in turn, was solely caused by the fall experienced by plaintiff on April 13th, 1965. This conclusion is consistent with

the fact, established by the uncontradicted testimony that up to the time of this accident plaintiff had pursued his professional duties without any limitation and that such duties required strenuous physical exertion, that at all times prior to the accident here involved that he engaged widely in active sports and led, in every respect, a normal life, that the onset of his present difficulty was the fall of April 13, 1965, and that he has been totally incapacitated since.

There is, moreover, a further consideration which though not necessary to the disposition of this case, supports the conclusion reached by the Court. The condition of instability in plaintiff's lumbar region is believed to have been caused by the back strain experienced by plaintiff in 1961. There is no testimony to the contrary. This incident occurred during--not before--the policy period. While the Court has not been able to find nor has been cited to any authority on the point, it is believed that an antecedent disease or bodily infirmity contributing with an accident to cause an injury must preexist the inception of the policy in order to defeat an insured's claim under an accident policy of the kind under consideration. The fact that the Supreme Court in characterizing the preexisting condition in *Crowder v. General Accident, supra*, refers to its having occurred "before the policy was written" suggests that the Court considered the point of significance, for otherwise there would have been no purpose served by the language.

Finally, the key criterion which appears to be suggested by *Crowder* (p. 121) in determining whether a preexisting condition contributing with an accident to cause an injury bars recovery is whether the accident standing alone without the preexisting condition *would have produced the results* giving rise to the claim. The evidence in the instant case is that the accident in question would, without any preexisting condition, have produced the results from which plaintiff is now suffering.

For the above reasons judgment will be for the plaintiff in the amount of $2,692.84 with interest computed upon each installment when due.